**Robert McCLURE, Jr., and Donald Gaxiola, Appellants,**

v.

**UNITED STATES of America, Appellee.**

**No. 18304.**

United States Court of Appeals Ninth Circuit.

May 4, 1964.

Rehearing Denied June 19, 1964.

**20**

------

Grant Shimizu, San Jose, Cal., for appellant, Robert McClure, Jr.

Herbert S. Matthews, South San Francisco, Cal., for appellant, Donald V. Gaxiola.

Cecil F. Poole, U. S. Atty., James F. Hewitt, Asst. U. S. Atty., San Francisco, Cal., for appellee.

Before CHAMBERS, ORR and MERRILL, Circuit Judges.

ORR, Circuit Judge:

Federal narcotics agents (hereafter "the agents") were aware that appellants were selling heroin. In order to obtain evidence of their illegal activities the agents secured the services of one Donald Hopping, a known addict and an acquaintance of appellant Gaxiola.

Pursuant to their plan to secure evidence, the agents had Hopping make a purchase of heroin from Gaxiola on March 19, 1962. Under directions from the agents Hopping phoned Gaxiola at his residence and stated that he "had a bill" and would "like to get any part of it or all of it". Gaxiola requested that Hopping call back later. Hopping subsequently made a second call to Gaxiola and was instructed by him to come to the Gaxiola residence.

The agents listened to both of these conversations by means of a "twin-phone" attachment. The "twin-phone", a small nonelectrical apparatus similar to the earpiece of a telephone, is connected to a regular telephone earpiece by means of a rubber tube and a clamp. Hopping, after setting up the appointment with Gaxiola, was outfitted with a "Fargo transmitting device", a small radio transmitter capable of being concealed on the person. He was also given $100 in marked bills with which to make a narcotics purchase.

Hopping proceeded to the Gaxiola residence and was admitted by McClure. Hopping then purchased a quantity of heroin from Gaxiola, paying for it with the $100 which the agents had given him. McClure was present at the time the narcotics were delivered to Hopping by Gaxiola, and Gaxiola divided the purchase money he received with McClure. The agents listened to the entire transaction by means of the Fargo transmitting device which Hopping carried.

Hopping and the agents followed a similar procedure in making a second purchase two days later on March 21, 1962. This purchase was also made at Gaxiola's home but Hopping dealt with McClure, rather than Gaxiola.

Later in the day on March 21, 1962, the agents observed McClure driving his auto near the Gaxiola home. They followed him and observed him put his hand to his mouth. Notwithstanding that they had no search warrant or warrant for arrest, the agents forced McClure's car to the curb and dragged him from it. During the ensuing scuffle the agents recovered a packet of heroin which had fallen from the person of McClure.

Gaxiola was indicted on two counts of selling and concealing heroin, 21 U.S.C.A. § 174. The first count charged the transaction of March 19, and the second that of March 21. McClure was indicted on the same two counts and also on a third count involving the incident which oc-

curred on the evening of March 21. Both appellants were convicted on all counts and given concurrent sentences of eight years on each count.

Appellants were represented in this court by separate counsel, who filed separate briefs and made seprate arguments. Gaxiola's contentions will be considered first. He does not deny that he sold and concealed the heroin involved in count one, but he contends that the government has failed to show that said heroin was unlawfully imported and that Gaxiola knew of the unlawful importation. The government relies on the presumption appearing in the second paragraph of 21 U.S.C.A. § 174 to show both unlawful importation and knowledge thereof.

■ Gaxiola argues that "the narcotic drug" referred to in the presumption of 21 U.S.C.A. § 174 [1] is the unlawfully imported narcotic itself; and thus the presumption does not relate to the fact of illegal importation, but only to his knowledge thereof. Hence, he contends, there was no evidence of unlawful importation. The same contention was rejected by this court in the case of Brothers v. United States, 328 F.2d 151 (9th Cir. 1964), which is controlling here.

Gaxiola further contends that his conviction under count one of the indictment must fall because some of the evidence upon which it was based was obtained by an allegedly illegal search and seizure.[2] The challenged evidence consisted of two twenty-dollar bills which were found in Gaxiola's wallet and which were the same bills that Hopping had used to make the narcotics purchase of March 19. Gaxiola claims that the bills were obtained by an entry of his residence in violation of 18 U.S.C.A. § 3109, which reads:

"The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance * * *."

The agents had in their possession both a search warrant for Gaxiola's residence and a warrant for his arrest. In execution of the warrants several officers, some with guns drawn, proceeded up the front stairs of Gaxiola's house about six o'clock in the evening of March 22, 1962. Other officers were at the same time at the rear of the house. Before reaching the front door the officers had to pass by a bay window in the front of the Gaxiola house and as they did so were observed by Mrs. Gaxiola, mother of appellant. Agent Fahey, who was in the lead, testified that when Mrs. Gaxiola observed him she "turned to run or turned and did run". When Fahey reached the front door he beat upon it and yelled, "We are federal officers and have a search warrant, open up". Fahey then heard "footsteps running in the wrong direction" and felt certain that the inmates were endeavoring to escape. He then kicked the door open to gain entrance. The total time spent by Fahey at the top of the stairs was four or five seconds; as Fahey testified, "long enough that I decided it was foolish to wait longer".

When the entrance was made it was evident that Mrs. Gaxiola had been approaching the door because she was standing near it when the officers gained entrance. The agents rushed past her into the house, seized Gaxiola, searched him, and recovered the incriminating currency.

■ Of course, if the entry did not comply with the requirements of the statute, the subsequent search was not lawful and the evidence obtained thereby

---

1. "Whenever on trial for a violation of this section the defendant is shown to have or to have had possession of *the narcotic drug*, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains the possession to the satisfaction of the jury." [Emphasis added.]

2. Gaxiola made no pre-trial motion to suppress under Fed.R.Crim.P. 41(e), but when the evidence was offered his counsel asked that it be suppressed since the entry did not conform to the processes required. The trial court appears to have entertained this motion on the merits, as it had discretion to do under Rule 41(e).

not admissible.[3] But we think such was not the situation here. The refusal of admittance contemplated by the statute will rarely be affirmative, but will often-times be present only by implication.[4] Officer Fahey announced, as the statute requires, that federal agents had come to search pursuant to a warrant. When he heard footsteps "running in the wrong direction" he had grounds to believe that his request had been rejected. This is especially so since he had previously noticed one of the occupants of the house begin to run. There are no set rules as to the time an officer must wait before using force to enter a house; the answer will depend on the circumstances of each case. But officers are never required to wait until the occupants have flown and thus render a search unavailing and an arrest impossible. We think the circumstances were such as would convince a reasonable man that permission to enter had been refused.

■ We now consider the McClure appeal. He argues that the use of the "twin-phone" attachment by the agents in listening to the telephone calls made by Hopping violated the Communications Act, 47 U.S.C.A. § 605, which reads in part:

"no person not being authorized by the sender shall intercept any communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person * * *."

If the statute was violated, neither the conversations nor evidence procured through them is admissible.[5]

■ Authorization to a listening by either party to a call satisfies the statute,[6] but McClure maintains that Hopping's consent was coerced and hence was not sufficient authorization.[7] Hopping had been arrested for a narcotics violation early in March, 1962, and the agents had promised to ask the United States Attorney that he not be prosecuted if he cooperated. We see no merit in this contention. We think the consent of Hopping was freely given; but admitting arguendo that the consent was coerced and that there was an unauthorized interception,[8] no prejudice resulted by the introduction of the officer's testimony concerning the calls into evidence. Hopping, a party to the conversations, also testified to the content of the phone calls, and there is no contention that his testimony was coerced. Hopping's testimony was therefore properly received,[9] and that of the agents was merely cumulative thereto.

■ Nor can the fact that the monitored phone calls were used to arrange the narcotics purchases make evidence of those purchases inadmissible as "fruit of the poisonous tree". The purchases were the product of what Hopping did, not of what the officers overheard. The purchases were not made by exploitation of the illegality, even if one existed.[10]

■ McClure contends that the presumption of 21 U.S.C.A. § 174 relied on

3. Miller v. United States, 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958).

4. Masiello v. United States, 317 F.2d 121 (D.C.Cir. 1963); Cf. People v. Maddox, 46 Cal.2d 301, 294 P.2d 6, cert. denied 352 U.S. 858, 77 S.Ct. 81, 1 L.Ed.2d 65 (1956).

5. Nardone v. United States, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307 (1939).

6. Rathbun v. United States, 355 U.S. 107, 78 S.Ct. 161, 2 L.Ed.2d 134 (1957); Carnes v. United States, 295 F.2d 598 (5th Cir. 1961), cert. denied 369 U.S. 861, 82 S.Ct. 949, 8 L.Ed.2d 19 (1962).

7. Weiss v. United States, 308 U.S. 321, 60 S.Ct. 269, 84 L.Ed. 298 (1939); United States v. Laughlin, 222 F.Supp. 264 (D.D.C.1963).

8. See Rathbun v. United States, 355 U.S. 107, 78 S.Ct. 161, 2 L.Ed.2d 134 (1957); Rayson v. United States, 238 F.2d 160 (9th Cir. 1956).

9. Wilson v. United States, 316 F.2d 212 (9th Cir. 1963).

10. See Wong Sun v. United States, 371 U.S. 471, at 487–488, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

by the government does not come into play because he was not shown to have had possession of the narcotics involved in count one. Possession sufficient to raise the presumption can be either actual or "constructive". Actual physical contact with the drugs is not required; rather, possession consists of "having [the drugs] in one's control or under one's dominion." [11] The power to control can be shared by others, and it can be shown by direct or circumstantial evidence.[12]

 As has been pointed out, Hopping, the former, testified that McClure admitted him to the Gaxiola residence when he went there to purchase narcotics on March 19; that McClure was present when the narcotics were delivered, although he did not actively participate in the transaction; and that Gaxiola immediately split the purchase money with McClure. In addition, McClure conducted the second transaction on the Gaxiola premises entirely by himself. From these facts it can be "honestly, fairly and conscientiously inferred" [13] that McClure and Gaxiola were partners in the transaction of March 19, each with a voice in the control and disposition of the drugs. The presence of such a power of control and disposal gives rise to constructive possession sufficient to raise the statutory presumption.

The conviction of each of the appellants on count one is affirmed. Since appellants were sentenced to eight year terms on each count, and no fines were imposed, it is unnecessary to pass on their contentions relating to counts two and three.[14] The eight year sentences would in any event remain in effect.

Affirmed.

---

11. Mullaney v. United States, 82 F.2d 638, 642 (9th Cir. 1936). See Henandez v. United States, 300 F.2d 114 (9th Cir. 1962) for a collection of the cases on possession.

12. Rodella v. United States, 286 F.2d 306 (9th Cir. 1960), cert. denied 365 U.S. 889, 81 S.Ct. 1042, 6 L.Ed.2d 199 (1961).

13. Hernandez v. United States, 300 F.2d 114, 117 (9th Cir. 1962).

14. Leonard v. United States, 324 F.2d 911 (9th Cir. 1963).