**UNITED STATES of America**

v.

**Louis D. SMITH, Appellant.**

**No. 75–1016.**

United States Court of Appeals, District of Columbia Circuit.

Argued May 22, 1975.

Decided Aug. 1, 1975.

Gary Howard Simpson, Washington, D. C. (appointed by this Court), for appellant.

Bernard J. Panetta, II, Asst. U. S. Atty., with whom Earl J. Silbert, U. S. Atty., John A. Terry, Stuart M. Gerson and John E. Drury, III, Asst. U. S. Attys., were on the brief, for appellee.

Before BAZELON, Chief Judge, FAHY, Senior Circuit Judge, and McGOWAN, Circuit Judge.

Opinion for the Court filed by Senior Circuit Judge FAHY.

Concurring and dissenting opinion filed by Circuit Judge McGOWAN.

FAHY, Senior Circuit Judge:

Appellant was convicted at a non-jury trial on one count of possession with intent to distribute 309,620 milligrams of marijuana (21 U.S.C. § 841(a)), and on another count of possession of 33 tablets of phencyclidine (21 U.S.C. § 844(a)). He was found not guilty on a third count. His sentence was three years imprisonment on the marijuana count and one concurrent year on the other. The evidence relied upon by the United States at trial was seized during the execution of a search warrant at an apartment leased to and occupied by appellant at the time of the search. After a hearing the District Court denied a motion to suppress the evidence.

The appeal raises the question whether the trial court erred in denying appellant's motion for judgment of acquittal grounded on the contention that the 309,620 milligrams of marijuana and the phencyclidine were not shown to have been in appellant's actual or constructive possession. A further question on appeal probes the manner in which the search warrant was executed, contended by appellant to have been violative of 18 U.S.C. § 3109, and that, therefore, the seized evidence should have been suppressed, with the further consequence that the convictions should be reversed.

I

The parties stipulated to the following facts: at approximately 6:30 a. m., July 31, 1974, four members of the Metropolitan Police Department, with a search warrant the validity of which is not questioned, came to the door of the apartment leased to appellant on the sixth floor of an apartment building. One officer knocked on the door and stated: "Police officers, we have a search warrant." Entry was not otherwise requested. After approximately fifteen seconds the officers attempted to open the door with keys which had been given to them by the manager of the building. They heard "hurried movement" from within the apartment, a stirring and sort of shuffling, which one of the officers considered to be a movement away from the door. After a further delay of approximately ten to fifteen seconds, the door to the apartment was

broken open with a sledge hammer. Appellant was in the bathroom, clothed only in a towel and standing by an open window, with a fresh cut on his left thumb. One of the officers looked out the bathroom window and saw a brown bag directly below on the sidewalk. It was later found to contain 309,620 milligrams of marijuana, having a "street value" of approximately $200.00. One other man was in the apartment. As the officers entered he "was still in a bed awakening," as the stipulation states the matter.

The police searched the room (its measurements were approximately 16′ by 14′ according to appellant's testimony at the suppression hearing), and in two wall closets, a night stand and dresser found the following articles which were admitted in evidence: a brown paper bag containing a plastic zip bag with marijuana residue, two plastic vials, containing respectively 33 red tablets of phencyclidine and 7,812.8 milligrams of marijuana, one smoking pipe which contained marijuana residue, forty-two manila coin envelopes, one cigarette roller and paper, and one scale. Appellant was known by the police to have occupied the apartment for at least three weeks.

II

■ Assuming for the time being the correctness of the District Court's ruling that the search was validly conducted notwithstanding the door was forced, a matter shortly to be considered, the issue of the sufficiency of the evidence turns upon whether the trial court erred in finding beyond a reasonable doubt that appellant had constructive possession of the marijuana in the paper bag on the sidewalk below the apartment's bathroom window and the phencyclidine tablets found in a wall closet in the apartment.

> Possession has been defined as being, either actual or constructive in that the accused is in position to exercise dominion and control over the contraband. (Footnote omitted.)

*Miller v. United States,* 121 U.S.App.D.C. 13, 347 F.2d 797, 799 (1965). See, also, *United States v. Holland,* 144 U.S.App. D.C. 225, 445 F.2d 701, 703 (1971).

> That "possession" which, under the statute, creates a presumption of criminal traffic in certain narcotics can be established by a showing that the accused knowingly had the contraband under his "control or dominion" (a situation sometimes denominated "constructive possession") even though it was not found on his person or within his immediate reach.

*United States v. Bonham,* 477 F.2d 1137, 1138 (3rd Cir. 1973).

The inference of control and dominion by appellant of the disputed evidence is compelling. There was no rational evidence linking the other man, who was permitted to go his way, with dominion or control. The appellant was lessee and occupant of the premises. The evidence found in the apartment clearly was in his control. He was the only other occupant. His control is confirmed by the inferences to be drawn with respect to the marijuana on the sidewalk. Neither that nor the evidence found in the apartment is isolated from the other. They are linked by his relationship to each. The place each was found supports the source of control of both. Aside from the juxtaposition of appellant with respect to the marijuana on the sidewalk, in a bag like other bags found in the apartment, the juxtaposition of the evidence in the apartment to that on the sidewalk, and the nature of the evidence, support the finding that the control of one was the source of control of the other—the appellant.

III

■ The officers, as noted, broke into the apartment. Accordingly, the validity of the search and the admissibility of the evidence seized raises the question whether they complied with the provisions of 18 U.S.C. § 3109, which read:

The officer may break open any outer or inner door or window of a house, *or any part of a house, or anything therein,* to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant.

As stated in *Miller v. United States,* 357 U.S. 301, 306, 78 S.Ct. 1190, 1194, 2 L.Ed.2d 1332 (1958):

> That section [§ 3109] provides that an officer, executing a search warrant, may break open a door only if "after notice of his authority and purpose," he is denied admittance.

And, as further stated in *United States v. Watson,* 307 F.Supp. 173, 175 (D.D.C. 1969):

> The validity of an entry to execute an arrest, either with or without a warrant, is tested by criteria identical to those embodied in Section 3109. *Miller v. United States,* 357 U.S. 301, 306, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958); *Garza-Fuentes v. United States,* 400 F.2d 219 (5th Cir. 1968); *Jackson v. United States,* 354 F.2d 980 (1st Cir. 1965). An officer cannot break into a house to effect an arrest, then, unless he first (1) identifies himself as a police officer, (2) states his purpose, and (3) is refused admittance.

And see, *United States v. Barrow,* 212 F.Supp. 837, 846 (E.D.Pa.1962).

Appellant contends there was no refusal of admittance because no request for admittance was made. No explicit request was made. So much is conceded. Following the suppression hearing the District Court found, however, that the request was impliedly made and was understood by appellant because of the knock on the door and statement of one of the officers that it was the police and they had a search warrant. The court explained:

> The narrow and perhaps somewhat technical question presented is whether the police were justified in breaking down the door without having first made a specific request that the door be opened. Research has failed to disclose a case precisely on point. *Miller v. United States,* 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958), reviews the historical background and some of the authorities. The rule is broadly stated as requiring the police to identify themselves as officers, which was done here, and to make an express announcement of their purpose. Here they announced, without requesting entry, that they had a search warrant. This announcement apparently was understood by defendant since he immediately undertook to conceal the narcotics in his possession. It appears to the Court that the announcement of the officers was not ambiguous, that there was a sufficient indication of desire to enter, and that the motion to suppress should accordingly be denied. (Footnotes omitted.) [1]

■ The conclusion thus reached by the District Court of a sufficient indication of a desire to enter, so understood by appellant, we think is sound. But the court made no finding of a refusal of admittance—a refusal which section 3109 in terms also requires as a condition to a valid entry by force. We need not labor the importance of this condition since it is prescribed by statute and is not constitutionally challenged or in doubt.[2]

---

1. The court added:

   The police will be well advised to develop a standard form of announcement which could eliminate variations of this type of technical objection in the future. It would be a simple matter to state: Police. We have a search warrant. Open up.

2. The Supreme Court in *Miller, supra,* 357 U.S. at 313, 78 S.Ct. at 1198, emphasized:

   The requirement of prior notice of authority and purpose before forcing entry into a home is deeply rooted in our heritage and should not be given grudging application. Congress, codifying a tradition embedded in Anglo-American law, has declared in § 3109 the reverence of the law for the individual's right of privacy in his house. Every householder, the good and the bad, the guilty and the innocent, is entitled to the protection designed to secure the common interest against unlawful invasion of the house.

   *See,* also, *United States v. Pratter,* 465 F.2d 227, 230–231 (7th Cir. 1972).

Considering the court's Memorandum as a whole it seems to us that its references to the occupants' non-attention to opening, indications of movement, and attempts to conceal the narcotics, were related by the court only to "the narrow and perhaps somewhat technical question presented . . . whether the police were justified in breaking down the door without having first made a specific request that the door be opened." Satisfied that there was a sufficient indication of a desire to enter, which the occupants understood, the court denied the motion to suppress without adverting to a refusal of admittance, although the factual situation described by the court is relevant also to that question.

█ We think it follows from two decisions of this court involving a particular search and seizure that the absence of a finding of refusal is fatal to the validity of a search and seizure, unless exigent circumstances dispensed with the need therefor, a matter to be separately discussed in Part IV, *infra*. In the first of the two cases, *Masiello v. United States,* 113 U.S.App.D.C. 32, 304 F.2d 399 (1962), heard by Edgerton, Bazelon and Burger, JJ., opinion by Bazelon, J., the court pointed out that section 3109,

> authorizes an officer to break open a door in order to execute a search warrant only after he has given notice of "his authority and purpose" and after he has been refused admittance.

*Id.* at 400. Masiello, the accused, had stated at the pre-trial hearing that the officers had broken into his dwelling without announcing they had a search warrant. He testified that he heard a knock and announcement "police", followed by a lapse of 10 seconds during which he said, "Just a minute," and was about to open the door when the police broke in. There was no testimony by the police at the hearing. The District Court, in denying appellant's motion to suppress, had ruled expressly only that under section 3109 the officer must be

"refused admittance" before breaking open a door, and held that "in a numbers operation, a wait of ten seconds doesn't seem to me to be too soon." But this court stated:

> Since the officers' failure to announce their purpose established non-compliance with § 3109, we need not consider appellant's contention that a ten-second delay could not properly be interpreted as a refusal to admit the officers within the meaning of that section.

*Id.* The court accordingly concluded that on the record before it the search should have been held unlawful by the District Court. Since the Government had pointed out, however, that at trial the officers had testified they did announce their purpose, the court remanded the case to enable the District Court to resolve the conflict thus exposed subsequently to the pretrial motion to suppress. Moreover, the court stated:

> The District Court should make findings of fact and conclusions of law on the issue

whether the search warrant was executed in violation of section 3109 (*Id.* at 401).

The search and seizure problem came again before the court, after the remand, in *Masiello v. United States,* 115 U.S.App.D.C. 57, 317 F.2d 121 (1963), this time heard by Bazelon, Burger and Wright, JJ., opinion by the present Chief Justice of the United States. As the result of the new hearings on the motion to suppress the District Court had made findings, and upon their basis had concluded that section 3109 had not been violated. The testimony of the officers now relied upon contradicted that of appellant which earlier had stood alone on the issue of announcement of purpose.[3] On this second appeal the court held the findings were supported by substantial evidence and should be affirmed. The court stated:

> that he heard a rustling or commotion inside the room.

**3.** On the remand there was testimony that no officers heard the words "Just a minute" as claimed by appellant, but one officer testified

Section 3109 provides that the officer may break in to execute a search warrant if, after notice of his authority and purpose, "he is refused admittance." Nowhere is there any definition of how long officers must wait after giving the statutory notice of authority and purpose. The purpose of the statute, among other things, is to allow the occupant to open the door to admit officers who are legally authorized to enter so that they may execute their duties with the least possible inconvenience to the occupant. But the phrase "refused admittance" is not restricted to an affirmative refusal. Indeed it would be an unusual case coming before the courts where an occupant affirmatively "refused admittance" or otherwise made his refusal known verbally after being given notice pursuant to § 3109. Where, as here, after giving the required notice the officers hear sounds which indicate to them that the evidence sought by the warrant may be in process of destruction, execution of the warrant need not be deferred long enough to allow completion of the process.

\* \* \* \* \* \*

It would be a grave error to construe what we have said to mean that we are disposed to sustain all speedy entries and searches which are forcibly executed. Quite the contrary. We do so here only on the narrow grounds revealed by this record. Our concern with the importance of compliance with § 3109 is demonstrated by our earlier remand for the hearing now under review; close cases such as this will always receive careful appellate

scrutiny. It is very desirable as an aid to appellate review that the facts concerning the required preliminary steps to entry should be developed and the factors relied on by the prosecution should appear in the record and be the subject of findings. The ruling on a motion to suppress while not an appealable order should be accompanied by findings in aid of review, particularly in a close case where an appellate court is likely to be called upon to reach that point on appeal. (Footnotes omitted.)[4]

*Id.* at 122–23.

■ We note two factual differences between the *Masiello* cases and the present. (1) In the former a conflict had arisen between Masiello's testimony at the suppression hearing and the officers' testimony at trial, whereas here the testimony of the officers as to the circumstances of the entry was not contradicted factually by appellant; and (2) in *Masiello* the absent finding of the District Court on the first appeal was with respect to an announcement by the officers of their purpose as required by section 3109, whereas here the absent finding is with respect to a refusal of admittance. These differences, especially when considered with then Judge Burger's emphasis upon the importance of findings with respect to the requirements of the statute as a condition to the use of force, do not obviate the need for a remand in this case as well, although of a more limited character than in *Masiello*.[5] The record will be remanded for review by the District Court, supplemented as the court may deem desirable in the exercise of a sound discretion, to dispose by find-

---

**4.** Since the *Masiello* decision a ruling granting a motion to suppress is appealable under 18 U.S.C. § 3731.

**5.** Similarly, the other factual distinctions between this case and *Masiello*, such as that this case involves possession of marijuana and an early morning search whereas *Masiello* involved possession of gambling instruments and a search in midafternoon, are not relevant

to the District Court's duty to make a finding with respect to refusal of admittance. But since the determination of whether there was a refusal "will depend on the circumstances of each case," *McClure v. United States,* 332 F.2d 19, 22 (9th Cir. 1964), *cert. denied,* 380 U.S. 945, 85 S.Ct. 1027, 13 L.Ed.2d 963 (1965), these distinctions may be relevant to the District Court on remand.

ings one way or the other with respect to a refusal of admittance, accompanied by an appropriate conclusion of law as to compliance with section 3109 and the admissibility of the seized evidence, except as such compliance may explicitly be found to have been dispensed with under the terms of Part IV of this opinion.

## IV

The testimony respecting the forced entry calls for some further consideration in light of the reference in the cases to exigent circumstances. We have noted that the stipulation states that it was only after the officers heard "hurried movement" from within the apartment, a stirring and sort of shuffling, which one officer considered to be movement away from the door, was resort had to the sledge hammer. This testimony not only bears on whether there was a refusal of admittance; it also suggests the possibility that exigent circumstances might be found to have dispensed with the need for full compliance with the terms of section 3109. The denial of the motion to suppress did not rest upon this theory, however, and, therefore, cannot be sustained by reason of it in the absence of a finding and conclusions in that regard. The District Court nevertheless is not precluded from considering the possibility on the remand.

In *Miller v. United States,* 357 U.S. at 309, 78 S.Ct. 1190, the Court, though referring to the "exigent circumstances" theory failed decisionally to adopt it as a qualification of the statutory terms spelled out in section 3109; and a qualification of those federal requirements was not actually adopted by the Court in *Ker v. California,* 374 U.S. 23, 39–41, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963), which rested largely upon state criteria which were not inconsistent with the Fourth Amendment. Thereafter in *Sabbath v.*

*United States,* 391 U.S. 585, 591, 88 S.Ct. 1755, 20 L.Ed.2d 828 (1968), while again referring to the "exigent circumstances" theory the Court did not base its decision upon that theory although, at 591, n. 8, 88 S.Ct. 1755, the Court suggested that such an exception to section 3109 might exist.[6] In the second *Masiello* case, however, our own court, though not relieving the trial court of the necessity of findings and conclusions, on its review of those made by the District Court after the remand stated:

> Where, as here, after giving the required notice the officers hear sounds which indicate to them that the evidence sought by the warrant may be in process of destruction, execution of the warrant need not be deferred long enough to allow completion of the process.

In *Miller v. United States,* 357 U.S. 301, at 309, 78 S.Ct. 1190, at 1195, 2 L.Ed.2d 1332, the Supreme Court cited several state court opinions where it was held that justification for non-compliance with statutory provisions as to service of warrant exists if exigent circumstances are present

> "when the officers may in good faith believe that they or someone within are in peril of bodily harm, Read v. Case, 4 Conn. 166, or that the person to be arrested is fleeing or *attempting to destroy evidence.* People v. Maddox, 46 Cal.2d 301, 294 P.2d 6." (Emphasis added.)

317 F.2d at 122–23. And see, *United States v. Wylie,* 149 U.S.App.D.C. 283, 462 F.2d 1178, 1185–86 (1972); *United States v. Manning,* 448 F.2d 992 (2d Cir. 1971), *rev'd,* 448 F.2d 997 (en banc), *cert. denied,* 404 U.S. 995, 92 S.Ct. 541, 30 L.Ed.2d 548 (1971); *United States v. Mapp,* 476 F.2d 67 (2d Cir. 1973); and *United States v. Artieri,* 491 F.2d 440 (2d

---

**6.** "The United States Supreme Court has never broadened the application of § 3109 beyond its own restricted terms," though it has left the question open. *United States v. Likas,* 448 F.2d 607, 608 (7th Cir. 1971).

Cir. 1974), *cert. denied,* 419 U.S. 878, 95 S.Ct. 142, 42 L.Ed.2d 118 (1974). The seeming reluctance of the Supreme Court to lower in any respect the standards enacted by Congress governing the use of force in invading the privacy of the home argues for caution in extending the application of the exigent circumstances qualification of the terms of section 3109. We are bound, however, by the recognition of such a qualification by this court in *Masiello* and *Wylie.*[7]

*Record remanded for further proceedings consistent with this opinion.*

McGOWAN, Circuit Judge (concurring and dissenting):

I join in the court's conclusion that there is adequate evidence of possession,

7. There has been some judicial leaning toward giving less weight to the need specified in section 3109 that admittance be refused before a forced entry than to the need for announcement of identity and purpose. *See,* for example, *United States v. Bustamante-Gamez,* 488 F.2d 4, 11 (9th Cir. 1973), *cert. denied,* 416 U.S. 970, 94 S.Ct. 1993, 40 L.Ed.2d 559 (1974).

We should be slow to accede to such a judicial interpretation of the statute when it is applied to the execution of a search warrant in the course of investigation of a non-violent crime, as here, or where urgency is not required to protect anyone from personal danger. The problem has been well considered by Stevens, J., in *United States v. Pratter, supra,* at 230–31:

Under the language of the statute the issue is whether "after notice of [their] authority and purpose, [the agents were] refused admittance." Without specific reference to the statutory language, the government argues that exigent circumstances justified a prompt entry. Before considering the circumstances which the government emphasizes, we note that although the issue is one of statutory construction, rather than constitutional law, the Anglo-American tradition of respect for the privacy of the home and the dignity of the citizen even when suspected of criminal behavior forecloses a "grudging application" of the statute. [*Miller,* 357 U.S.] at 313, 78 S.Ct. at 1197.

The statute applies to a critical situation which is fraught with danger for the entering officers as well as the occupants of the dwelling. Prompt action and surprise may be necessary to forestall escape, the destruction of evidence, or even violence; yet

but I do not think the remand directed by it is essential to a fair disposition of this appeal.

As this and other courts have recognized, the "refused admittance" component of 18 U.S.C. § 3109 stands on a different practical footing from the other requirement of "notice of [police] authority and purpose." To establish the latter, there must be proof of affirmative action by the police, whereas in the case of the former, particularly in the narcotics context, explicit verbal response is hardly to be expected. In such circumstances the statute can only be, but is properly, satisfied by evidence of non-verbal conduct indicating a lack of purpose promptly to respond to the police announcement.[1]

The central question pressed upon the District Court, and here, with respect to

prompt action and surprise may also precipitate such consequences. In short, the execution of a warrant is a job for a professional, trained both to perform his mission and to heed the statutory command to show a decent respect for the privacy of the citizen before bursting into his home. (Footnotes omitted).

A general discussion of the problems arising under section 3109 is found, also, in the relatively recent case of *United States v. Phelps,* 490 F.2d 644 (9th Cir. 1974), *cert. denied,* 419 U.S. 836, 95 S.Ct. 64, 42 L.Ed.2d 63 (1974).

1. A recent statement of the law in this regard is contained in *United States v. Ortiz,* 445 F.2d 1100, 1102 n. 2 (8th Cir. 1971), *cert. denied,* 404 U.S. 993, 92 S.Ct. 541, 30 L.Ed.2d 545 (1971):

The phrase "refused admittance" is not restricted to an affirmative refusal. *United States v. Chambers,* 382 F.2d 910 (6th Cir. 1967); *Masiello v. United States,* 115 U.S. App.D.C. 57, 317 F.2d 121 (1963). Rarely if ever is there an affirmative refusal. More often the officers meet with silence as the occupants seek to destroy evidence or escape. Accordingly, whether the failure to respond to an officer's knock constitutes refused admittance is a question of the circumstances. *See United States v. Augello,* 368 F.2d 692 (3rd Cir. 1966); *McClure v. United States,* 332 F.2d 19 (9th Cir. 1964). *Ortiz* upheld the execution of a search warrant by narcotics agents at 6:45 A.M. on their testimony that, when there was no "immediate response" of a ⁄ kind to their announcement, the door was forced.

the legality of the entry was the alleged inadequacy of the police announcement of notice of authority and purpose; and the District Court memorandum opinion entered the day after the hearing on the suppression motion is addressed in terms to this question. But there is enough in that opinion, in my judgment, to warrant our being satisfied that the court was amply aware of the "refused admittance" requirement and fully persuaded that admission had been refused within the meaning of the statute. An examination of the transcript of the evidentiary hearing on the suppression motion shows that the court repeatedly focused upon the evidence relating to what happened immediately after the police had made their announcement as it bore on the danger of destruction of narcotics; and, in the memorandum denying the motion entered the next day, a key finding was

> "At about this time they [the police] heard hurried movement within the apartment, a stirring, sort of shuffling, which one of the detectives considered movement away from the door. After a further delay of some ten or fifteen seconds, the door was broken open with a sledge hammer."

Further on in its memorandum the court said that "The [police] announcement apparently was understood by defendant since he immediately undertook to conceal the narcotics in his possession."

This finding and comment are obviously responsive to our statement in *Masiello*, quoted in the majority opinion, that "Where, as here, after giving the required notice the officers hear sounds which indicate to them that the evidence sought by the warrant may be in process of destruction, execution of the warrant need not be deferred long enough to allow completion of the process."

I think the evidence here clearly shows "refused admittance," as contemplated by the statute, and that we do not need a remand to enable us to be sure that the district judge was of the same view.