**James N. WEST, Jr., Appellant,**

**v.**

**UNITED STATES, Appellee.**

**No. 96–CO–1778.**

District of Columbia Court of Appeals.

Argued Jan. 22, 1998.

Decided April 30, 1998.

---

Marc L. Resnick, appointed by the court, for appellant.

L. Jackson Thomas II, Assistant United States Attorney, with whom Mary Lou Leary, United States Attorney at the time the brief was filed, and John R. Fisher, Elizabeth Trosman, and Jeffrey A. Beatrice, Assistant United States Attorneys, were on the brief, for appellee.

Before SCHWELB and FARRELL, Associate Judges, and GALLAGHER, Senior Judge.

SCHWELB, Associate Judge:

Following the denial of his pre-trial motion to suppress physical evidence, James N. West, Jr. entered a conditional plea of guilty of possession of cocaine with intent to distribute it, in violation of D.C.Code § 33–541(a)(1) (1993). On appeal, he contends that police officers who had secured a warrant to search his apartment for narcotics violated the ap-plicable "knock and announce" statute, D.C.Code § 33–565(g), by prematurely forcing entry into the apartment with a battering ram. He therefore claims that the evidence recovered as a result of that entry should have been suppressed. We agree and reverse.

## I.

Sergeant David Robinson of the Metropolitan Police Department, a nine-year veteran with extensive search warrant experience, was the principal government witness at the hearing on West's motion to suppress evidence. Robinson testified that, on September 28, 1995, at about 9:40 p.m., he and other officers under his command came to West's apartment in southeast Washington, D.C. to execute a search warrant for narcotics. When they arrived, Robinson heard the sounds of a video game being played in the apartment. He knocked on the door "real loud" and shouted "Police! We have a search warrant! Open the door!"

Sergeant Robinson testified that, after he knocked and announced, "[t]he video game stopped and I heard footsteps. They did not sound like they were coming towards the door, and no one answered the door." Suspecting that evidence might be in the process of being destroyed, Robinson instructed one of the officers to force the door with a battering ram. According to Robinson, the time that elapsed between the original knock and the entry with the ram was "about 5 seconds." In the apartment, officers recovered thirty-two rocks of crack cocaine, as well as seventy-five empty ziplock bags and a pager. West admitted that the cocaine and paraphernalia belonged to him.

At the conclusion of the hearing, the trial judge issued his oral ruling. The judge stated that he credited Sergeant Robinson's testimony.[1] He noted that Robinson was an

---

[1]. West and several relatives and friends testified that the officers broke down the door without either knocking or announcing their presence. In addition, Sergeant Robinson did not state in his police report that he knocked on the apartment door before he used the ram. Nevertheless, the trial judge credited Robinson's testimony.

West asks us to hold, in light of the impeachment of Robinson and the testimony of the defense witnesses, that the officers did not knock or announce. The trial judge heard the testimony and we did not, and we decline to engage in the appellate fact-finding which would be required to overturn the judge's credibility determinations.

experienced officer, and that "no reason was given for Sergeant Robinson not knocking and announcing." He found, in conformity with Robinson's testimony, that after Robinson had knocked and announced, the video game was placed on pause. Then, according to the judge, Robinson "for whatever reason, maybe hearing the children running, but certainly not an unreasonable interpretation, instructed the individuals to bang the door down." The judge also commented that Robinson "could have knocked and broken in within one second if he felt that that was a reasonable amount of time based on his experience and what he heard." The judge therefore denied West's motion to suppress tangible evidence. West entered a conditional guilty plea, and the judge sentenced him to a term of imprisonment. This appeal followed.

## II.

■ In reviewing the trial judge's decision, we are bound by his factual findings unless they are clearly erroneous. *See* D.C.Code § 17–305(a) (1997); *Griffin v. United States*, 618 A.2d 114, 117 (D.C.1992). The judge's legal conclusions, on the other hand, are reviewed *de novo. Id.* (citations omitted). Whether the officers were "refused admittance" to West's apartment, within the meaning of Section 33–565(g), is a mixed question of law and fact. *Id.* Because basic constitutional liberties are implicated,[2] we apply the more searching *de novo* standard. *Id.* at 118; *see also Poole v. United States*, 630 A.2d 1109, 1117 (D.C.1993), *cert.*

*denied,* 513 U.S. 855, 115 S.Ct. 160, 130 L.Ed.2d 98 (1994).[3]

Our "knock and announce" statute provides, in pertinent part, that an officer "may break open any outer or inner door ... to execute [a] warrant [for controlled substances] if, after notice of his authority and purpose, he is refused admittance." D.C.Code § 33–565(g). The present appeal turns on whether the officers were "refused admittance" within the meaning of the statute.

■ "Refusal to admit the police is to be distinguished from failure to do so ..., [for] to refuse to do something is an act of the will, while to fail to do it may be an act of inevitable necessity." *Griffin, supra,* 618 A.2d at 120 (citations and internal quotation marks omitted). "[T]he police need not wait for the occupants affirmatively to refuse them admittance [, however,] if the police can reasonably infer from the actions or inactions of the occupants that [the officers] have been constructively refused admittance...." *Williams v. United States,* 576 A.2d 700, 703 (D.C.1990). "Special circumstances supporting a reasonable belief on the part of the police that the occupants' non-response to knocking and announcement pursuant to § 33–565(g) is deliberate will justify a forced entry almost immediately after their detection." *Griffin, supra,* 618 A.2d at 124–25 (footnote omitted). In the absence of such special circumstances, however, "a significant time lapse is required to justify a conclusion that admittance was refused." *Id.* at 125

*See, e.g., In re S.G.,* 581 A.2d 771, 774–75 (D.C. 1990).

**2.** "Given the longstanding common-law endorsement of the practice of announcement, we have little doubt that the Framers of the Fourth Amendment thought that the method of an officer's entry into a dwelling was among the factors to be considered in assessing the reasonableness of a search...." *Wilson v. Arkansas,* 514 U.S. 927, 934, 115 S.Ct. 1914, 1918, 131 L.Ed.2d 976 (1995).

**3.** In arguing for suppression in the trial court, West focused on his claim that the officers did not knock and announce, and he did not specifically argue that the time lapse between the officers' announcement of their presence and their use of the battering ram to break down the door was too short to permit a finding of compliance with § 33–565(g). In its brief in this court, the

government took the position that West had waived the latter point, and that if this court were to consider West's new argument on appeal at all, the "plain error" standard of review was applicable. In his motion to suppress evidence, however, West explicitly alleged that "[i]n the instant case there was no constructive refusal to admit the police officers," and at oral argument the government expressly, and in our view providently, acknowledged that this was sufficient to preserve the issue for review. "[O]nce a ... claim is properly presented, a party can make any argument in support of that claim; parties are not limited to the precise arguments made below." *Yee v. Escondido,* 503 U.S. 519, 534, 112 S.Ct. 1522, 1532, 118 L.Ed.2d 153 (1992) (citations omitted); *Mills v. Cooter,* 647 A.2d 1118, 1123 n. 12 (D.C.1994).

(citation and internal quotation marks omitted).

■ In the present case, there was no "significant time lapse." Sergeant Robinson testified that approximately five seconds elapsed between his knock on the door and the officer's use of the battering ram. During those five seconds, Robinson had to make the decision that forced entry was required. He also had to communicate to his subordinate that the time had come to "ram" the door. The officer then had to apply the battering ram to the door. Each of these steps takes at least a minimal amount of time, and the case is not so very different from the situation envisaged by the trial judge, in which a single second could, in his view, constitute a "reasonable time."

■ There was no evidence that the police expected anyone in the apartment to be armed or dangerous, and the government makes no claim of exigent circumstances on that account. *Cf. Poole, supra,* 630 A.2d at 1118–22; *Culp v. United States,* 624 A.2d 460, 462–64 (D.C.1993). The search warrant in this case was for controlled substances, which can easily be flushed down the toilet or otherwise concealed or destroyed, but this alone does not constitute exigent circumstances. *Griffin, supra,* 618 A.2d at 124.[4] The government thus relies exclusively on two facts as providing the special circumstances that are required to permit forced entry: first, that the video game was turned off, and second, that Robinson heard steps that "did not sound like they were coming towards the door."

The government cites no authority, and we know of none, to support its contention that sounds like these, without more, permitted

the officers to conclude, within five seconds or less, that someone had deliberately refused them entry. Both facts relied upon are quite ambiguous. We know of no reason to believe that an occupant would turn off a video game if he wanted to exclude the police, but that he would keep the machine on if he intended to permit the officers to enter. Footsteps that did not "sound" as if they were headed towards the door might be significant if they continued for an appreciable period of time, but even the most cooperative occupant might need to fetch his bathrobe or slippers before coming to the door.

There is obviously no specific time period, applicable to all situations, which must elapse before the police may reasonably infer that they have been refused admittance. Most of the decisions are heavily fact-bound. In *Griffin, supra,* 618 A.2d at 115–16, we held that a period of thirty seconds from the knock on the door to the forced entry was insufficient, but in that case the police executed the search warrant at 1:40 a.m., and the occupants of the apartment could be expected to be asleep. In *Poole, supra,* 630 A.2d at 1117, we concluded as a matter of law that a delay of ten seconds at 8:15 on a Saturday morning was not enough, but in that case, unlike this one, the officers heard nothing in the apartment to suggest to them that anyone was at home. "Generally, a delay of five seconds or less after knocking and announcing has been held a violation of 18 U.S.C. § 3109."[5] *United States v. Jones,* 133 F.3d 358, 361 (5th Cir.1998) (per curiam). In *United States v. Moore,* 91 F.3d 96 (10th Cir.1996), the court summarized the recent federal cases relating to the kind of situation presented here.[6] We do not believe that any

---

4. Indeed, § 33–565(g), which permits forced entry only after police have been "refused admittance," deals exclusively with search warrants for unlawful drugs. If we were to hold that the possibility that drugs will be destroyed, standing alone, excuses compliance with the knock and announce rule, then § 33–565(g) "would be undermined to the point of inefficacy in any search warrant case involving alleged distribution of narcotics." *Griffin, supra,* 618 A.2d at 124 (citations omitted).

5. 18 U.S.C. § 3109 is the federal counterpart of D.C.Code § 33–565(g).

6. If the occupants do not admit the officers within a reasonable period of time, the officers may be deemed to be constructively refused admittance, and they may then enter by force. *United States v. Knapp,* 1 F.3d 1026, 1031 (10th Cir.1993) ("It was plausible for the officers to conclude that they were affirmatively refused entry after a ten to twelve second interval...."). Here, however, the district court found that the forced entry was "virtually instantaneous" and correctly concluded that this precluded any claim that the officers were constructively refused admittance. At most, the officers waited three seconds: significantly less

of these decisions accords the police as much leeway as the government is claiming in this case. In sum, we conclude that the facts to which Sergeant Robinson testified were insufficient, as a matter of law, to support a reasonable belief that the occupants had deliberately refused the police entry. The time was simply too short to warrant such a conclusion.

The government relies principally on *United States v. Bonner*, 277 U.S.App.D.C. 271, 874 F.2d 822 (1989). In our view, however, *Bonner*—a 2:1 decision from which then Chief Judge Wald vigorously dissented—is readily distinguishable from the case before us. In *Bonner*, the searching officers knocked loudly on the door three times. They heard "what sounded like footsteps *running from the door*," as well as "thumping or bumping inside the premises." 277 U.S.App.D.C. at 272, 874 F.2d at 823 (emphasis added).[7] "[F]ollowing their renewed knocking and announcement, officers heard sounds consistent with both refused admittance *and destruction of the object of the search*." 277 U.S.App.D.C. at 274, 874 F.2d at 825 (emphasis added). Even so, the interval between the officers' first knock on the door and the forced entry was approximately

eleven or twelve seconds—more than twice the period that Sergeant Robinson waited in the present case. The similarities between the two cases are thus less remarkable than the differences.

The protection of a citizen's home from forced entry is at the core of the values secured by the Fourth Amendment and by the knock-and-announce statute. Breaking down a door with a battering ram may help to apprehend drug dealers such as West, but it also places the safety and property of innocent residents of the home at risk. Such a drastic measure may not be undertaken, under our statute, unless the information available to the police permits them reasonably to infer that the occupants have deliberately refused them entry. In this case, the facts were too sparse, and insufficient time had elapsed, to permit the intrusive action taken by the officers.

### III.

For the foregoing reasons, West's conviction is reversed. The case is remanded to the trial court with directions to grant West's motion to suppress tangible evidence.

*So ordered.*

---

time than in prior cases in which constructive refusal has been found. *Compare United States v. Lucht*, 18 F.3d 541, 550–51 (8th Cir.) (waiting three to five seconds before entering was not long enough to find constructive refusal to admit), *cert. denied*, [513 U.S. 949, 115 S.Ct. 363, 130 L.Ed.2d 316] (1994); *United States v. Marts*, 986 F.2d 1216, 1218 (8th Cir.1993) (less than five seconds was not sufficient to find constructive refusal to admit); and *United States v. Rodriguez*, 663 F.Supp. 585, 587–88 (D.D.C.1987) (three to five second delay was insufficient to find constructive refusal to admit) *with [U.S. v.] Smith*, 63 F.3d [956,] 962 [10th Cir. (1995)] (forty-five seconds was sufficient to find constructive refusal to admit) and *Knapp*, [*supra*,] 1 F.3d at 1030–31 (ten to twelve seconds was sufficient to find constructive refusal to admit).

*Moore, supra*, 91 F.3d at 98.

**7.** Applying the constitutional standard of *Richards v. Wisconsin*, 520 U.S. 385, 117 S.Ct. 1416, 137 L.Ed.2d 615 (1997), our dissenting colleague suggests that "there is no constitutional or statutory difference between steps that do not sound like they are (or sound like they are not) coming toward the door and steps that sound like they are retreating." In *Richards*, the question was

whether there had been an unreasonable search or seizure, in violation of the Fourth Amendment. The present case, on the other hand, turns on the construction of a local statute which permits an officer to break down the door only if "he *is* refused admittance." That statute had been construed by this court in *Williams, supra*, 576 A.2d at 703, and in *Griffin, supra*, 618 A.2d at 124–25, well before the Supreme Court's constitutional "knock and announce" decisions, beginning with *Wilson v. Arkansas, supra* note 2, and *Williams* and *Griffin* are therefore binding on us under *M.A.P. v. Ryan*, 285 A.2d 310 (D.C. 1971). Subsequent Supreme Court cases which deal with constitutional questions, but which do not address at all the meaning of the dispositive statutory language, cannot fairly be viewed as rendering *Williams* and *Griffin* inoperative as precedents.

Footsteps away from the door suggest that there may have been a refusal to admit police; steps taken for a few seconds in some neutral direction do not. Because we conclude that there has been a statutory violation, we need not decide whether the Fourth Amendment standard is the same as the statutory one, *cf. United States v. Ramirez*, —— U.S. ——, ——–——, 118 S.Ct. 992, 997–98, 140 L.Ed.2d 191 (1998), or whether the Constitution has been transgressed.

FARRELL, Associate Judge, dissenting.

When a police officer executing a search warrant for drugs at an apartment knocks and announces his identity and purpose, hears a video game suddenly turned off followed by footsteps which his trained ear tells him are not coming toward the door, and hears no words of intended compliance with the order to open, may he force the door open without waiting further? My colleagues say no; the officer could not "reasonabl[y] belie[ve]," *ante* at 870, that he had been refused admittance within the meaning of D.C.Code § 33–565(g). Although the right outcome of this case is a close question, I disagree with the majority's choice of applicable standard and its disposition of the case. Under the test recently stated by the Supreme Court for when police may dispense with the knock and announce requirements altogether, I would uphold the entry and resulting seizure of drugs.[1]

This is not a "five second wait" case. If it were, the result generally reached in such cases would dictate suppression here.[2] *See United States v. Jones*, 133 F.3d 358, 361 (5th Cir.1998) ("Generally, a delay of five-seconds or less after knocking and announcing has been held a violation of 18 U.S.C. § 3109."). This case, instead, presents an issue of exigency: did Sergeant Robinson, from the sounds (and silence) he heard in response to his announced identity and purpose, have reason to suspect that the occupants of the apartment were denying him admittance at least long enough to do something to "inhibit the effective investigation of the crime." *Richards v. Wisconsin*, 520 U.S.

385, ——, 117 S.Ct. 1416, 1421, 137 L.Ed.2d 615 (1997).

In *Richards*, the Supreme Court's last visit to this subject but one, the Court considered whether "the Fourth Amendment permits a blanket exception to the knock-and-announce requirement" for an "entire category" of criminal investigations, those involving drug felonies. *Id.* at ——, 117 S.Ct. at 1418.[3] The Court acknowledged that drug investigations "frequently [do] pose special risks to officer safety and the preservation of evidence," but declined to exempt them "from the neutral scrutiny of a reviewing court [as to] the reasonableness of the police decision not to knock and announce in a particular case." *Id.* at ——, 117 S.Ct. at 1421. Instead, the Court set the standard for dispensing with these requirements, in drug cases as in others, at the minimum constitutional level:

> In order to justify a "no-knock" entry, the police must have *a reasonable suspicion* that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence. This standard—*as opposed to a probable cause requirement*—strikes the appropriate balance between the legitimate law enforcement concerns at issue in the execution of search warrants and the individual privacy interests affected by no-knock entries.

*Id.* at —— – ——, 117 S.Ct. at 1421–22 (emphases added). "This showing is not high,"

---

1. I note at the outset how surprised the trial judge likely will be to find himself reversed on a ground never argued to him at the hearing on the motion to suppress. This case does not require me to join issue with the majority on its over-broad reading, *ante* at 868 n. 3, of *Yee v. Escondido*, 503 U.S. 519, 534, 112 S.Ct. 1522, 1532, 118 L.Ed.2d 153 (1992).

2. The government has not made the arguments of remedy for a knock-and-announce violation that it made as *amicus* in *Wilson v. Arkansas*, 514 U.S. 927, 937 n.4, 115 S.Ct. 1914, 1919 n. 4, 131 L.Ed.2d 976 (1995), and which the Supreme Court did not reach there.

3. In *United States v. Ramirez*, —— U.S. ——, 118 S.Ct. 992, 140 L.Ed.2d 191 (1998), the Court

later decided the unrelated issue of whether the Fourth Amendment holds officers to a higher standard when a no-knock entry results in the destruction of property. Along the way, however, the Court pointed out that its "decisions in *Wilson [v. Arkansas*, 514 U.S. 927, 115 S.Ct. 1914, 131 L.Ed.2d 976 (1995)] and *Richards [, supra ]* serve as guideposts in construing the [federal knock and announce] statute," 18 U.S.C. § 3109. *Ramirez*, —— U.S. at ——, 118 S.Ct. at 997. The Court also held that " § 3109 codifies the exceptions to the common-law announcement requirement." *Id.*

   *Richards*, as well as *Wilson* and *Ramirez*, were decided after all of the decisions of this court on which the majority relies.

the Court stressed, and one "actual circumstance[ ]" which the police specifically may rely on in drug cases is "the easily disposable nature of the drugs." *Id.* at —, 117 S.Ct. at 1422.

Our case, unlike *Richards,* presents no issue of "dispensing [entirely] with the knock-and-announce requirement." *Id.* at —, 117 S.Ct. at 1421. By knocking and announcing his identity and purpose, Sergeant Robinson satisfied what one court of appeals has termed "the principal values embodied in" the knock-and-announce statute. *United States v. Bonner,* 277 U.S.App.D.C. 271, 276, 874 F.2d 822, 827 (1989). If reasonable suspicion, as described in *Richards,* justifies bypassing the knock and announce requirements altogether, obviously no more was needed to support the more limited judgment by Sergeant Robinson that further delay in awaiting voluntary admittance would inhibit this drug investigation. The issue, then, is whether during the required "brief interlude between announcement and entry" here, *Richards,* 520 U.S. at — n. 5, 117 S.Ct. at 1421 n. 5, Robinson heard enough to give him reasonable suspicion that he was being refused admittance long enough to permit destruction of evidence.

My colleagues dispute application of the *Richards* standard. They say that resolution of this case "turns on the construction of a local statute which permits an officer to break down the door only if 'he *is* refused admittance.'" *Ante* at 870 n. 7 (emphasis in original). And to satisfy this statute, they say, the police must have "a *reasonable belief* that the occupants ... deliberately refused [them] entry." *Ante* at 870 (emphasis added). In other words, they apply the standard of probable cause rejected in *Richards* to find a "statutory violation" here. *Ante* at 870 n. 7. But the answer to this analysis is that the local statute, D.C.Code § 33–565(g) (1993), is identical in all material respects to 18 U.S.C. § 3109. That statute "codifies the common law in this area, and the common law in turn informs the Fourth Amendment,"

*Ramirez, supra* note 3, — U.S. at —, 118 S.Ct. at 997; thus, not surprisingly, the "decisions in *Wilson* [, *supra* note 3,] and *Richards* [interpreting the Fourth Amendment standard of reasonableness] serve as guideposts in construing the statute." *Id.* The majority offers no reason, textual or otherwise, for reading § 33–565(g) to impose a higher burden of suspicion than did *Richards* before police may conclude they are being denied entry long enough to "inhibit the effective investigation of the crime." *Richards,* 520 U.S. at —, 117 S.Ct. at 1421.

Applying the *Richards* test, as we must, I would hold that Sergeant Robinson had the requisite reasonable suspicion, though not by much. As the majority points out, the trial judge credited the testimony of Robinson whose experience in executing search warrants ran to "probably hundreds" of cases. When he arrived at the door of the apartment with his team, he could hear a video game being played inside. After he knocked and loudly announced his identity and purpose, the video game stopped and was followed by footsteps. No one said, "I'm coming," "Be right there," or anything else manifesting an intent to open voluntarily.[4] Nonetheless, although "[a] refusal to reply to an officer's order to 'open up' can be implied from silence," *United States v. Mendonsa,* 989 F.2d 366, 370 (9th Cir.1993), I agree with my colleagues that hearing no spoken reply could not furnish the required suspicion without more, even coupled with the stopping of the electronic game. Any occupant, including an innocent one, who experiences the shock of a loud pounding at the front door might need several seconds to · collect himself before responding orally. If Robinson acted reasonably, it is because of the added suspicious meaning of the footsteps.

The majority regards the footsteps as insolubly ("quite") ambiguous, *ante* at 869, largely because Robinson stated only that they "did not *sound* like they were coming to-

4. Appellant testified that it was he who had been playing the video game and had put it on pause. While the trial judge at one point speculated that Robinson might have heard the footsteps of "children running," he did not imply that hear-

ing a video game played—an activity often engaged in by children—diminished Robinson's reason to suspect from the footsteps and silence that entry was being deliberately delayed.

wards the door" (emphasis added). Since the occupant might have been preparing to comply ("fetch[ing] his bathrobe or slippers"), *ante* at 869, the police had to wait some undefined additional time before entering. I view the matter differently. If Robinson had stated, "I heard steps running away from the door," there is no question he could have forced entry immediately. *See, e.g., McClure v. United States*, 332 F.2d 19, 21–22 (9th Cir.1964). If, only slightly less unambiguously, he had heard sounds "moving away" from the door, the result would be no different. *See, e.g., United States v. Smith*, 171 U.S.App.D.C. 342, 343, 520 F.2d 74, 75, *aff'd after remand*, 173 U.S.App.D.C. 313, 524 F.2d 1287 (1975) (per curiam) (entry justified by sounds of shuffling thought to be "movement away from the door"); *Masiello v. United States*, 115 U.S.App.D.C. 57, 58, 317 F.2d 121, 122 (1963) (entry justified when police "heard no words [of compliance] spoken" and heard "a rustling or other commotion inside the room"). In my view, there is no constitutional or statutory difference between steps that do not sound like they are (or sound like they are *not*) coming toward the door and steps that sound like they are retreating. Robinson heard steps that were inconsistent with movement toward the door, combined with no verbal indication of intended compliance. This caused him reasonably to fear that an occupant unmistakably aware of his presence might be on his way to destroy evidence.

By implication, decisions that have invalidated no-knock entries in a similar time frame support the reasonableness of Robinson's fear, for a recurrent theme of those decisions is the *absence* of sounds in response to the police announcement. *See, e.g, United States v. Lucht*, 18 F.3d 541, 550 (8th Cir. 1994) (police heard "no noise or movement" inside dwelling); *United States v. Marts*, 986 F.2d 1216, 1217 (8th Cir.1993) (police "neither heard nor saw anything from inside the trailer"); *United States v. Rodriguez*, 663 F.Supp. 585, 587 (D.D.C.1987) (police "heard *no* noises or suspicious sounds from within

the house") (emphasis in original); *Gregory v. State*, 616 A.2d 1198, 1200 (Del.1992) (police "hear[d] no noise from inside the apartment"). Even Judge Wald's dissent in *United States v. Bonner, supra,* prized by the majority, was based importantly on what she viewed as the lack of clear findings by the trial court on whether the officer heard a sound inside that "was inconsistent with someone getting up to answer the door." 277 U.S.App.D.C. at 280 n. 1, 874 F.2d at 831 n. 1 (Wald, Chief Judge, dissenting). That description fits Sergeant Robinson's suspicion exactly.

The fact that, as the majority says, the occupant of the apartment might have been moving to get his robe or slippers before coming to the door does not make Robinson's contrary fear unreasonable. "It must be rare indeed that an officer [hears] behavior consistent *only* with [suspicion of] guilt and incapable of innocent interpretation." *United States v. Price*, 599 F.2d 494, 502 (2d Cir.1979) (emphasis in original). By its nature the reasonable suspicion standard leaves open possible innocent explanations for ambiguous behavior. The police here were not bound to assume a benign explanation for the footsteps. Nor were they obliged to consider, with the majority, the possibility that while the steps were not coming toward the door they might be moving "in some neutral direction." *Ante* at 870 n. 7. Compliance with the Fourth Amendment, and the statute, does not turn on such subtle calculations.

The police here had obtained a search warrant,[5] and they knocked and announced their identity. At most my colleagues can say Robinson should have waited some additional few seconds to let the ambiguous evidence of his senses clarify itself. Like the trial judge, I do not think his judgment on the spot was unreasonable. Forcing entry into a home is serious business, but the Supreme Court has taken that concern into account in yet setting the standard that applies here at reasonable suspicion. Applying

---

5. "[T]he officers had secured a warrant, eliminating that element of the exigency requirement designed to ensure that the Fourth Amendment's Warrant Clause is not eroded by an exigency too quickly perceived by those called upon to serve on the firing line." *Bonner,* 277 U.S.App.D.C. at 276, 874 F.2d at 827.

that test, I would sustain the validity of the entry.