**UNITED STATES of America**

v.

**Cassimirr AUGELLO, also known as Casey Augello, Appellant.**

**No. 15922.**

United States Court of Appeals Third Circuit.

Argued Oct. 7, 1966.

Decided Nov. 4, 1966.

Patrick T. McGahn, Jr., Atlantic City, N. J. (Solomon Friss, Atlantic City, N. J., on the brief), for appellant.

Donald G. Targan, Asst. U. S. Atty., Newark, N. J. (David M. Satz, Jr., U. S. Atty., Newark, N. J., on the brief), for appellee.

Before FORMAN, FREEDMAN and SEITZ, Circuit Judges.

## OPINION OF THE COURT

FORMAN, Circuit Judge.

Appellant Cassimirr "Casey" Augello, after waiver of trial by jury in the United States District Court for the District of New Jersey, was convicted of one count of a three count indictment charging him with failure to pay a special tax on wagering operations in violation of 26 U.S.C. § 7262. The principal ground of error asserted is that the District Court erred in failing to suppress evidence seized during the execution of an arrest warrant and search warrant in alleged violation of 18 U.S.C. § 3109.

Agents of the Internal Revenue Service received information from a reliable confidential informant that the appellant was operating a large bookmaking establishment in his home in Atlantic City, New Jersey. In the two months preceding the issuance of the warrants, a special agent and the confidential informant had placed wagers by calling a phone number listed at appellant's address. Investigation showed that no tax returns or regulation applications had been filed by the appellant or anyone else at that address. On this basis warrants for the arrest of the appellant and for the search of the premises were issued on June 4, 1965.

At approximately 2:30 p. m. on June 11, 1965, five agents of the Internal Revenue Service arrived by car in front of appellant's home. They ran from the automobile, three going to the front door and two to the side door. At this time the appellant's sister and mother were watching television in the living room in the front of the house. Though there was conflicting testimony, the District Court found that the front screen door was locked, but the solid door behind it was open, and that when Agent Sullivan approached the front door he could see directly into the living room where the two women sat. Agent Sullivan gave "a few raps" and said "Federal Officers with a search warrant. Open the door." Thereupon appellant's sister stood up and called "Casey! Casey!" and started toward the rear of the house. Agent Druiz tried to open the screen door and found it locked. Supervising Agent Cairone said, "Break it!" Agent Druiz put the heel of his hand through the screen, reached in, lifted the latch, whereupon the agents entered. The time between their arrival at the door and their entry was about four or five seconds. They proceeded down the hallway toward the rear of the house, and found the appel-

lant in the kitchen. The agents thereupon informed appellant that they were federal agents with a warrant for his arrest. Within the next two or three minutes appellant was formally arrested.[1] Substantial incriminating evidence was obtained as a result of the search.

The relevant statute is 18 U. S.C. § 3109 which provides as follows:

"The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of a warrant."

The fact that an arrest warrant is also involved here has no special significance since the validity of entry under an arrest warrant is to be tested by standards identical to those in the above statute.[2] Thus we are concerned with three statutory requirements: (1) announcement of authority, (2) announcement of purpose, and (3) refusal of admittance. Since the District Court's specific finding that the first two announcements were made, may not be disturbed, it remains only to consider whether the officers were "refused admittance." Such refusal is present where it can reasonably be inferred from the actions or inaction of the occupants of the premises to be searched.[3] In McClure v. United States,[4] several officers with probable cause to believe the appellant was trafficking in heroin and with appropriate warrants went to the front and rear doors of the premises to be searched. The officers, some with guns drawn, proceeded to the front door, passing a bay window, and as they did so, were observed by the mother of the appellant. One of the agents testified that she began to run. Upon reaching the front door, the agent beat upon it and shouted "We are federal officers and have a search warrant, open up." He then heard footsteps running in the "wrong direction," whereupon he kicked open the door to obtain entrance. The total time between arrival at the door and entry was four or five seconds. The court validated the legality of the search and commented as follows:

"'* * * The refusal of admittance contemplated by the statute will rarely be affirmative, but will oftentimes be present only by implication. * * When [the officer] heard footsteps 'running in the wrong direction' he had grounds to believe that his request had been rejected. This is especially so since he had previously noticed one of the occupants of the house begin to run. There are no set rules as to the time an officer must wait before using force to enter a house; the answer will depend on the circumstances of each case. But officers are never required to wait until the occupants have flown and thus render a search unavailing and an arrest impossible. We think the circumstances were such as would convince a reasonable man that permission to enter had been refused."[5]

We think that this passage expresses a correct view of the requirements of the statute and that the present case is indistinguishable from *McClure*. When, after making their announcement, the officers saw the appellant's sister running away from the door and calling the name of the very person for whose arrest they

1. Certain statements taken from the appellant after his arrest were excluded from evidence by the District Court upon a finding that he was not informed of his rights when placed under formal arrest. These are not involved in the present consideration.

2. McClure v. United States, 332 F.2d 19 (9 Cir. 1964) (assumed without discussion); United States v. Sims, 231 F.

Supp. 251 (D.Md.1964); United States v. Barrow, 212 F.Supp. 837 (E.D.Pa.1962).

3. McClure v. United States, note 2 supra; Masiello v. United States, 115 U.S.App. D.C. 57, 317 F.2d 121 (1963).

4. Note 2, supra.

5. 332 F.2d at 22.

possessed a warrant, they were justified in making an immediate entry. Thus the District Court was not in error in denying appellant's motion to suppress.

■ The appellant also makes a claim that the search was invalid because the appellant was not warned of his rights at the time of his arrest. But the search was conducted pursuant to a valid search warrant, and the District Court in fact excluded from evidence all statements of the accused made after his arrest. The judgment of the United States District Court for the District of New Jersey will be affirmed.