287 So.2d 13 (1973)
STATE of Florida, Petitioner,
v.
Nicholas S. KELLY, Respondent.
No. 42381.
Supreme Court of Florida.
October 31, 1973.
Rehearing Denied January 14, 1974.
*14 Frank Schaub, State's Atty., Richard W. Seymour, Asst. State's Atty., and Robert Shevin, Atty. Gen., for petitioner.
Larry Helm Spalding, Sarasota, for respondent.
DEKLE, Justice.
This cause is before us on petition for writ of certiorari to review the decision of the District Court of Appeal, Second District, reported at 260 So.2d 903. Our jurisdiction is based upon conflict with Earman v. State, 265 So.2d 695 (Fla. 1972), and State v. Clarke, 242 So.2d 791 (Fla. App.4th, 1971). Fla. Const. art. V, § 3(b)(3) (1973), F.S.A.
On January 22, 1969, Judge Lynn N. Silvertooth, Circuit Judge, Twelfth Judicial Circuit, issued a search warrant authorizing a search of the defendant's home for narcotics and items relating to the sale or use thereof. That evening, officers of the Sarasota County Sheriff's Department and the Sarasota City Police Department, the Constable for District One for Sarasota County and an Assistant State Attorney proceeded to the defendant's residence. A few minutes before they approached the house they were told by a confidential informant who had just left the residence that the defendant and three other individuals were in the dwelling; that they were using narcotics when the informant left, and that defendant sold him some LSD just before he left the house.
One of the detectives, upon reaching the front door of the house, opened an exterior screen door and turned the doorknob of the front door. The door opened and the detective entered and announced: "Police officers with a search warrant. Remain seated." Other officers then entered and the search warrant was read.
The defendant, his wife and three other individuals were present in the room. All were in the living room watching television and no narcotics were being used. After reading the search warrant, the officers proceeded to search the dwelling and each of those present. Evidence believed to be marijuana and LSD was found in the house and one of the individuals had in his possession tablets believed to be the illegal drug LSD. The defendant was arrested and charged with possession of marijuana, possession of LSD, sale of marijuana and sale of LSD.
The defendant filed a motion to suppress the physical evidence which was seized during the search. The motion was submitted to the trial court for ruling on the basis of a stipulated statement of facts and no testimony was heard. On May 20, 1971, the trial judge entered an order granting defendant's motion on the ground that the search warrant was not executed in compliance with Fla. Stat. § 933.09, F.S.A., requiring prior "due notice of authority and purpose" and refusal of admittance before "the officer may break open any outer door," window, etc.
The district court affirmed, citing this Court's decision in Benefield v. State, 160 So.2d 706 (Fla. 1964), which listed the following *15 exceptions to the requirements of similar Fla. Stat. § 901.19(1), F.S.A., requiring prior announcement by the officer of his authority and purpose before using force to enter. Benefield held (p. 710):
"[W]e conclude that even if probable cause exists for the arrest of a person, our statute is violated by an unannounced intrusion in the form of a breaking and entering any building, including a private home, except (1) where the person within already knows of the officer's authority and purpose; (2) where the officers are justified in the belief that the persons within are in imminent peril of bodily harm; (3) if the officer's peril would have been increased had he demanded entrance and stated the purpose, or (4) where those within made aware of the presence of someone outside are then engaged in activities which justify the officers in the belief that an escape or destruction of evidence is being attempted. Time and experience will no doubt suggest other exceptions. .. ."
The District Court held that the case did not come within any of the Benefield exceptions, and stated: (260 So.2d 905)
"The exception sought is that where the amount of drugs is small the drugs may be easily disposed of by flushing them down a toilet or other drain, and that compliance with the `Knock and Announce' requirement of Sections 933.09 and 901.19(1), Florida Statutes, would afford those inside the building time enough to dispose of any drugs before the officers gained entrance.
"In order to create such an additional exception to the list stated in Benefield, supra, this Court would be required to do violence to the plain and unambiguous language of the applicable statutes. The statutes require due notice of the authority and purpose of the officers seeking to gain admittance."
It has been recognized that generally where a police officer fails to announce his authority and purpose prior to a forceable entry into a home to make an arrest or to execute a warrant, the arrest or execution is illegal and the fruits of any attendant search are subject to suppression. e.g., Boynton v. State, 64 So.2d 536 (Fla. 1953). There are, however, several exceptions as we recognized in Benefield, supra.
Our late, revered Justice Glenn Terrell, in what was to be the very last of the many cogent and colorful opinions left to us by that great Sage of the Bench,[1] noted in Benefield that time and experience will suggest other exceptions.[2] In 1971, the District Court of Appeal, Fourth District, recognized an additional exception in State v. Clarke, supra, commenting on the exceptions of Benefield, as follows: (242 So.2d 791)
"Since those judicial exceptions include only instances where activities indicate that destruction of evidence is then being attempted, they do not appear to cover the facts in the case at bar, *16 where there was no reason to believe that evidence was being destroyed but only that it would be destroyed if the officers announced their presence. However, the court noted that `time and experience will no doubt suggest other exceptions.' ...
"Time and experience have shown us that the small amounts of drugs usually involved in drug law violations may be easily flushed down a toilet or other drain, and that this is frequently done... . Based on this experience and in order not to frustrate the purpose of the arrest and seizure, the police sergeant ordered that the apartment be entered without announcement and demand. Certainly compliance with the statute is not necessary where the arrest would be frustrated if the officer stated his purpose and demanded entrance. Suspects have no constitutional right to destroy or dispose of evidence, and no basic constitutional guaranties are violated because an officer succeeds in getting to a place where he is entitled to be more quickly than he would had he complied with the statute.
"Where, as here, the evidence sought consists of relatively small amounts of contraband, and where a nearby bathroom or kitchen provides for easy disposal, it is not unreasonable for the officers to conclude that an attempt will be made to dispose of the evidence if they announce their presence to those inside the room and thus frustrate the purpose of the arrest and seizure. Unannounced entry under such circumstances is lawful and does not violate the constitutional rights of any person." (Emphasis added in last para.)
In Earman v. State, 253 So.2d 481 (Fla. App.4th, 1971), the Fourth District Court of Appeal followed the exception it had established in Clarke, and applied it as a matter of law. While we reversed the District Court in Earman v. State, 265 So.2d 695 (Fla. 1972), in its ruling applied as a matter of law, we did recognize the Clarke exception. In reversing, we stated, in pertinent part: (p. 697)
"An appellate court is not justified in concluding there was such an exception as a matter of law when the record is devoid of any testimony by police officers or other competent evidence showing they had reason to fear at time of entry the destruction of evidence. Once Earman challenged his arrest, the burden of proving its validity as a predicate for the lawful admission of the seized marijuana in evidence, was upon the State... . Essential to such proof in this case is testimony by the arresting officers or other competent evidence that they had reasonable grounds to believe the marijuana within the house would be immediately destroyed if they announced their presence. Absent such evidence, the fruits of any search conducted pursuant to such arrest must be considered illegally obtained." (Emphasis added)
The Second District's proper concern was with doing violence to the plain language of the statute and thus violating the judicial restraint against creating legislation. It is our view, however, that the recognized, stated exceptions in Benefield which the Second District was following, reasonably extend under the language of that holding to the further Clarke exception by the Fourth District and our own statements in the subsequent Earman review upon certiorari, where the evidence sought to be suppressed consists of relatively small amounts of disposable contraband and shows that the officers had reason to fear at time of entry the destruction of evidence. The future possibility of such a further exception was apparently even in the mind of Justice Terrell when in his opinion in Benefield he refers to the factual situation there of "the practical difficulties inherent in disposing of $3,000 in small bills" "by the classic method of flushing it down the drain" before officers *17 could enter. Thus, the factual situation must control in this, as in other, exceptions.
In Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963), the United States Supreme Court held that the Fourth Amendment incorporated the rule of announcement as an essential element of a reasonable search. But the Supreme Court also recognized that under certain circumstances the Constitution did not require announcement. The Court agreed that the exceptions to the announcement rule as recognized under the common law were not prohibited. The basis for recognizing the exceptions to Fla. Stat. § 901.19(1), F.S.A., in Benefield was that the statute was a codification of the common law rule and the exceptions were a part of that rule.
On the question of exactly what circumstances would justify an exception, the Supreme Court in Ker split 4-4. Mr. Justice Clark, however, in an opinion in which Mr. Justice Black, Mr. Justice White and Mr. Justice Stewart concurred, recognized that at common law there existed an exception similar to that recognized by this Court in Earman, to-wit, where testimony by police officers or other competent evidence shows they had good reason to fear at the time of entry that the evidence would be destroyed. The district court in the case before us did not recognize and apply this exception and we must therefore grant certiorari for a reversal of the trial court.
Accordingly, certiorari is granted and the decision of the District Court of Appeal, Second District, is quashed and remanded with directions to reverse and remand to the trial court, to follow the exception established in Clarke and recognized by this Court in Earman and determine whether or not there existed "good reason to fear at time of entry the destruction of evidence."
It is so ordered.
CARLTON, C.J., and ROBERTS and McCAIN, JJ., concur.
BOYD, J., dissents with opinion.
ERVIN, J., and GROSSMAN, Circuit Judge, dissent and concur with BOYD, J.
BOYD, Justice (dissenting).
I dissent.
There is no basis for this Court to exercise jurisdiction in this cause. The decision of the District Court does not conflict with any decision of this Court or any District Court.
In Earman v. State,[1] we reversed the District Court of Appeal, Fourth District. The Fourth District had approved a search and seizure of illegal drugs in a home. The police officers entered without knocking, on the premise that if they had knocked, the persons inside would have destroyed the physical evidence, some marijuana. There was no evidence to substantiate that belief. We reversed the case, and said that in the absence of a showing that persons were about to destroy the incriminating evidence, an entry without knocking would not be permitted.
The circumstances in both cases were similar. While, in the case before us, policemen had a search warrant, and in the Earman case, they did not; nevertheless, in both cases, policemen simply walked in through unlocked doors without knocking. Because there is no conflict between this and the Earman case, there is no conflict jurisdiction.
The Fourth Amendment prohibition against unlawful searches and seizures is one of our most cherished constitutional rights. Dealers in illegal drugs  like murderers, rapists and others accused of crime  are entitled to constitutional safeguards. If these rights are to be denied to any person or group, we would first have to amend the Constitutions of the United *18 States and the State of Florida, and our Florida Statutes. The Federal and State Constitutions stand as shields against forms of tyranny that control in many countries. It is better to permit a guilty person to escape the penalty of law than to deny any American the protection granted by law.
I therefore dissent.
ERVIN, J., and GROSSMAN, Circuit Judge, concur.
NOTES
[1] The Judicial Sayings of Justice Glenn Terrell, compiled by M. Lewis Hall of The Miami Bar (1962).
[2] Justice Terrell in his inimitable and colorful style in Benefield also left us these stirring words of freedom and the home: (160 So.2d 709)

"William Pitt categorized a man's home as his castle. Paraphrasing one of his speeches in which he apostrophized the home, it was said in about this fashion: The poorest pioneer in his log cabin may bid defiance to the forces of the crown. It may be located so far in the backwoods that the sun rises this side of it; it may be unsteady; the roof may leak; the wind may blow through it; the cold may penetrate it and his dog may sleep beneath the front steps, but it is his castle that the king may not enter and his men dare not cross the threshold without his permission.
"... The law so interpreted is nothing more than another expression of the moral emphasis placed on liberty and the sanctity of the home in a free country. Liberty without virtue is much like a spirited horse, apt to go berserk on slight provocation if not restrained by a severe bit."
[1] 265 So.2d 695 (Fla. 1972).