396 So.2d 219 (1981)
STATE of Florida, Appellant,
v.
Michael G. MANNING, Jere Daniel Bell, Darrell Armbruster, Fred Cunningham, William M. Norrell, Adrian T. Perschl, Jr., James Lee Winberry and Cary Cawthornes, Appellees.
No. 79-2304.
District Court of Appeal of Florida, Fourth District.
March 25, 1981.
Rehearing Denied April 29, 1981.
*220 Jim Smith, Atty. Gen., Tallahassee, and Paul H. Zacks, Asst. Atty. Gen., West Palm Beach, for appellant.
Charles I. Poole, Law Office of Charles I. Poole, South Miami, for appellees-Manning, Armbruster, Cunningham, Norrell, Perschl, Winberry, and Cawthorne.
James W. Reilley and Barry E. Witlin, Chicago, Ill., and Robert P. Foley, West Palm Beach, for appellee-Bell.
DOWNEY, Judge.
The State of Florida has perfected this appeal from an order suppressing a quantity of marijuana, obtained by the police in the search of a residence pursuant to a search warrant. We reverse.
The motion to suppress filed by the appellees contended that the search warrant was defective for two reasons; one, because the affidavit upon which the warrant was issued was itself insufficient, and two, because the warrant was improperly executed. After hearing the evidence of the parties, some of which was conflicting, the trial court found that the affidavit was sufficient, but due to the improper execution of the warrant the evidence discovered should be suppressed.
There was some conflict in the evidence regarding the manner in which the warrant was executed. The trial judge resolved those conflicts by finding:
The evidence shows that the officers approached the residence for the purpose of serving the warrant. They knocked on the door and, when someone opened the door, they (the officers) announced their purpose and entered. There is a dispute as to exactly how they entered, but there is no dispute that they entered without permission, but before any occupant refused their admission.
In view of the finding, the trial court held that the officers had failed to comply with Section 933.09, Florida Statutes (1977).[1]
The State submits that the officers scrupulously observed the procedures enumerated in Section 933.09, Florida Statutes (1977), prior to entering the residence which was the subject of the search warrant. Admission to the premises was gained only after the officers knocked, an occupant opened the door and the purpose of the visit was announced. The error attributed to the trial court is that of requiring an actual acknowledgment on the part of the occupants, either granting or refusing the officers permission to enter the residence, before such entry could be lawfully gained.
The greater portion of appellees' argument is focused upon their own testimony that the officers thrust open the door and entered without announcing their purpose, without permission, and consequently in total abrogation of the procedures prescribed in Section 933.09. The trial judge, however, rejected appellees' version of the facts and there is competent evidence in the record to support the finding that the officers knocked, announced, and entered the residence once the door had been opened from the inside. It is uncontroverted that the officers were never invited to enter the residence, nor were they denied permission by the appellees. The error which we perceive is not in the finding of fact, but rather in the legal conclusion ascribed thereto by the trial court; that is, that the uninvited entry invalidated the entire procedure.
Section 933.09 is the statutory embodiment of a common law rule which has its roots in a tradition of respect and privacy afforded a man in his own home. Such a concept, that the sanctity of a man's home is inviolate, can be traced back as early as Thirteenth Century England.[2] In commenting *221 on the federal counterpart[3] to Section 933.09, the United States Supreme Court stated in Miller v. United States:
The requirement of prior notice of authority and purpose before forcing entry into a home is deeply rooted in our heritage and should not be given grudging application. 357 U.S. at 313, 78 S.Ct. at 1197.
The Florida courts have long recognized this principle. In Benefield v. State, 160 So.2d 706 (Fla. 1964)[4] the Florida Supreme Court emphasized the importance of the "knock and announce rule":
This sentiment has moulded our concept of the home as one's castle as well as the law to protect it. The law forbids the law enforcement officers of the state or the United States to enter before knocking at the door, giving his name and the purpose of his call. There is nothing more terrifying to the occupants than to be suddenly confronted in the privacy of their home by a police officer decorated with guns and the insignia of his office. This is why the law protects its entrance so rigidly. The law so interpreted is nothing more than another expression of the moral emphasis placed on liberty and the sanctity of the home in a free country. Liberty without virtue is much like a spirited horse, apt to go berserk on slight provocation if not restrained by a severe bit. 160 So.2d at 709.
The purpose for such a rule, beyond mere deference for an historical tradition, is the protection of three significant interests:
(1) the prevention of violence and physical injury to the police and the occupants;
(2) the unexpected exposure of the private activities of the occupants;
(3) the property damage resulting from forced entry.[5]
Thus, the knock and announce rule was designed to safeguard the integrity and privacy of one's home as well as to promote the safety of all concerned in situations where a police officer must "break open" some part of a dwelling in order to effectuate an arrest or serve a warrant. Since the rule is specifically addressed to instances where a "breaking" occurs, it is incumbent on a law enforcement officer to comply with the knock and announce requirements where it appears a breaking may well precede the entry. State v. Clarke, 387 So.2d 980 (Fla. 2d DCA 1980). The concept of a breaking is not limited nor synonymous with that of force. In fact, the United States Supreme Court in Sabbath v. United States, 391 U.S. 585, 88 S.Ct. 1755, 20 L.Ed.2d 828 (1968), has strictly construed the federal statute, substantially similar in form to Section 933.09, Florida Statutes (1977), to apply to an entry by officers through a closed, but unlocked, door. The Court held:
An unannounced intrusion into a dwelling  what § 3109 basically proscribes  is no less an unannounced intrusion whether officers break down a door, force open a chain lock on a partially opened door, open a locked door by use of a passkey, or, as here, open a closed but unlocked door. At 589, 88 S.Ct. at 1757.
With this as background, we now turn to the facts of the instant case. The trial court found, and the record supports this finding, that the officers both knocked and announced prior to stepping inside the appellees' residence. Since the knock resulted in the door's being voluntarily opened by an occupant, the officers never had to resort to a "breaking" to gain entry. Consequently, the language in Section 933.09 requiring an officer be "refused admittance" before "breaking open" any portion of the residence *222 to gain entry was not applicable.[6] However, since the officers were confronted with a closed door on their initial approach to the residence, they were nevertheless required to knock and announce.
In order to determine whether the officers' method of entry somehow violated the spirit of the knock and announce rule it is necessary to examine it in light of the three prevailing interests promoted by the rule. First, since the officers, at least one of whom was in uniform, stated their purpose prior to entering the home, it was thus clear to the occupants that the officers were not intruders who had come for an illegal purpose. Thus, the potential for violence was somewhat reduced. Second, since the occupants saw fit to open the door before inquiring who was there, their expectations of privacy were greatly diminished. The language in 933.09 pertaining to "refused admittance" is included to provide an occupant with time sufficient to voluntarily open the door and thereby avoid unnecessary destruction of property. This is not a consideration in the instant case. It is inconceivable to us what purpose, if any, would be served by requiring the officer to await either refusal or approval by the occupants before entering the apartment.
Accordingly, we reverse the order appealed from and remand the cause for further proceedings.
REVERSED AND REMANDED, with directions.
BERANEK and GLICKSTEIN, JJ., concur.
NOTES
[1] 933.09 Officer may break open door, etc., to execute warrant.  The officer may break open any outer door, inner door or window of a house, or any part of a house or anything therein, to execute the warrant, if after due notice of his authority and purpose he is refused admittance to said house or access to anything therein.
[2] Miller v. United States, 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958). Therein the Supreme Court traces the common law development of the knock and announce rule.
[3] 18 U.S.C. § 3109.
[4] Although Benefield deals with section 901.19, Florida Statutes (1961), the right of officers to break into a building to make an arrest, the requirements to knock and announce, as well as the reasons therefor, are the same as those found in Section 933.09, Florida Statutes (1977), the right of an officer to break into a house to execute a warrant.
[5] Payne v. United States, 508 F.2d 1391 (5th Cir.1975) at 1393-4, U.S. cert. denied, 423 U.S. 933, 96 S.Ct. 287, 46 L.Ed.2d 263 (1975). See also: 2 W. LaFave, Search and Seizure, § 4.8 at 124 (1978).
[6] 2 W. LaFave, Search and Seizure, § 4.8 at 129-130 (1978).