565 So.2d 730 (1990)
STATE of Florida, Appellant,
v.
Pamela D. ROBINSON, Appellee.
No. 89-02133.
District Court of Appeal of Florida, Second District.
June 22, 1990.
Rehearing Denied July 31, 1990.
*731 Robert A. Butterworth, Atty. Gen., Tallahassee, and Charles Corces, Jr., Asst. Atty. Gen., Tampa, for appellant.
Wilbur C. Smith, III, Fort Myers, for appellee.
ALTENBERND, Judge.
The state appeals an order suppressing two small bags containing approximately twelve rocks of crack cocaine. The trial court suppressed the evidence because the deputy sheriffs who executed the search warrant of the defendant's home did not provide prior "due notice of [their] authority and purpose" before forcibly entering the home. § 933.09, Fla. Stat. (1987). We affirm the order but certify to the Florida Supreme Court the question of the necessity to exclude this evidence.

I.
On February 16, 1989, several deputies of the Lee County Sheriff's Department executed a search warrant at a house owned by the defendant, Pamela D. Robinson. There is no dispute that the search warrant was properly issued on probable cause that the defendant's house contained illegal drugs. With the assistance of a confidential informant, the deputies had purchased illegal drugs at the house shortly before the warrant was obtained.
The search warrant was executed at 6:15 p.m. on a Thursday evening. The sheriff's department dispatched a number of deputies in police cars to execute the warrant. Some of the deputies were in uniform. Some of the cars were marked police cars. When the police cars stopped in front of the home, the deputies observed a man standing at the front doorway inside the house. The front door was open, but the screen door was closed. When the man saw the police, he left the doorway and disappeared from the deputies' sight into *732 the house. A few of the deputies, including uniformed deputies, immediately ran toward the front of the house. At least one of these deputies carried a shotgun.
When this group of deputies reached the front door, they stopped for only a few seconds before entering. Although the record contains conflicting evidence, it supports the trial court's conclusion that the officers entered the home either before or as they announced their purpose. Once inside the home, they located two occupants, Ms. Robinson and the man who had been at the door. Shortly thereafter, a female lieutenant searched Ms. Robinson and found a small quantity of crack cocaine in Ms. Robinson's front pocket. Ms. Robinson was arrested and charged with possession of a controlled substance with intent to sell.
Although the trial court recognized that the police may need to act swiftly in such a case, it suppressed this evidence because it concluded that these officers had been "a little fast" in entering the home. The trial court found no exigent circumstances to except this search from the statutory requirements of due notice. The trial court's decision on the issue of due notice is a decision of fact which is binding on this court if it is supported by substantial competent evidence. Earman v. State, 265 So.2d 695 (Fla. 1972); State v. Dominguez, 367 So.2d 651 (Fla. 2d DCA), cert. denied, 373 So.2d 457 (Fla. 1979). In this case, the trial court's decision has the appropriate evidentiary support.
As a matter of law, the opening of an unlocked screen door is a breaking which invokes the due notice requirements of section 933.09, Florida Statutes (1987). Nank v. State, 406 So.2d 1282 (Fla. 2d DCA 1981); Johnson v. State, 395 So.2d 594 (Fla. 2d DCA 1981). See also Burden v. State, 455 So.2d 1066 (Fla. 1st DCA 1984), review denied, 464 So.2d 556 (Fla. 1985); Bouknight v. State, 455 So.2d 438 (Fla. 1st DCA 1984), review denied, 461 So.2d 113 (Fla. 1985).
Several exigent circumstances are recognized as conditions under which the police need not comply with the knock-and-announce requirements. Benefield v. State, 160 So.2d 706 (Fla. 1964); State v. Clarke, 242 So.2d 791 (Fla. 4th DCA 1970), cert. denied, 246 So.2d 112 (Fla. 1971). In this case, however, the state did not present evidence which established any exception.
Two possible exceptions warrant comment. First, the state did not present evidence that the deputies reasonably believed that this search involved substantially more peril to life, if they announced their purpose and waited for permission to enter. State v. Hills, 428 So.2d 715 (Fla. 4th DCA), review denied, 438 So.2d 833 (Fla. 1983). Although the testimony contained vague references to a possibility of guns in the home, the confidential informant's information and the other evidence did not establish a reasonable basis to fear that a gun would be used. Compare State v. Avendano, 540 So.2d 920 (Fla.2d DCA 1989) with State v. Drowne, 436 So.2d 916 (Fla. 4th DCA), review denied, 441 So.2d 633 (Fla. 1983), and Moreno v. State, 277 So.2d 81 (Fla. 3d DCA 1973).
Second, the state did not present evidence that the deputies reasonably believed that the man at the screen door, who disappeared inside the house, would destroy evidence or become violent. Although this situation may have concerned the deputies, the evidence on this factor did not compel the trial court to find an exigent circumstance. Hunsucker v. State, 379 So.2d 1043 (Fla. 1st DCA 1980); see also Bouknight.

II.
Both the trial court and this court are required to use the exclusionary rule as the remedy for any violation of section 933.09, Florida Statutes (1987). This judicially created remedy was announced as a matter of common law in Benefield. This common law exclusionary rule is based on the sanctity of the home and the need for privacy. While these reasons are as important, if not more important, today as they were in 1964, there have been many changes in Florida and in legal remedies over the last twenty-six years. At this *733 point, we believe it would be constructive for the supreme court to reconsider the exclusion of evidence as an essential remedy in cases where the police have obtained a proper search warrant and the violation of section 933.09 results from a negligent execution of the warrant which results in no significant personal injury or property damage.
We emphasize that the exception to the exclusionary rule which we propose is a narrow exception and should be applicable only under limited circumstances. We are not proposing any modification in cases involving warrantless searches or in cases of police misconduct resulting in significant violence or property damage. We are suggesting a modification for only those cases in which the police misconduct can be fairly categorized as a matter of negligence or good faith mistake, not for those cases in which the statutory violation is deliberate or willful. See § 933.17, Fla. Stat. (1989). We make this proposal because we believe that it will strengthen compliance with section 933.09 and the privacy rights which the statute promotes.
In suggesting this reconsideration, we point out several important developments since 1964. First, the state has waived sovereign immunity for the operational negligence of police officers. § 768.28, Fla. Stat. (1989); Kaisner v. Kolb, 543 So.2d 732 (Fla. 1989). Ms. Robinson may have a viable civil claim against the Lee County Sheriff's Department for any violation of this statute and for any resulting trespass.[1] Thus, unlike Mr. Benefield, Ms. Robinson has a potential civil remedy in which a judge or jury could award damages which would be measured by the actual extent of her injury.
From a jurisprudential perspective, Ms. Robinson's civil remedy seems superior to the suppression of this evidence and the dismissal of the criminal charges because the suppression does not seem to be a remedy for damages which are proximately related to the deputies' wrong. The deputies had a valid warrant. They simply failed to wait a few seconds at the door while identifying themselves and announcing their purpose before entering the home.[2] This wrong may be an invasion of privacy and a trespass for a few seconds, but it did not result in the discovery of evidence which the deputies had no right to gather. At most, that evidence was gathered a few seconds early.
Second, the rule of inevitable discovery has significantly developed since 1964. Nix v. Williams, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984); 4 LaFave, Search and Seizure, § 11.4(a) (2d ed. 1987). If the rule of inevitable discovery were applied to all cases in which primary evidence was seized in violation of the knock-and-announce requirement, the rule would emasculate the requirement. This problem, however, should not exist if the exception is limited to cases in which the civil remedy is available and the circumstances otherwise fall within our limited proposal.
Third, given that the exclusion of evidence is intended to prevent police misconduct, we think it is significant to consider the steps which Florida has taken over the last twenty-six years to increase professionalism within law enforcement agencies. The Florida Legislature has established the *734 Criminal Justice Standards and Training Commission. § 943.11-.12, Fla. Stat. (1989). It has created substantial minimum qualifications for employment as a police officer. § 943.13, Fla. Stat. (1989). The legislature requires police officers to take continuing education courses to retain their officer status. § 943.135, Fla. Stat. (1989). It also requires every law enforcement agency to have a system to receive and review complaints concerning officer misconduct. § 112.533, Fla. Stat. (1989). This system results in frequent disciplinary actions by departments against their own officers. Although these steps have not created a perfect law enforcement system, they have established a system which is better able to enforce the requirements of section 933.09 and similar laws. More important, the system should also be able to effectively supervise, correct, and discipline police errors in this area with only limited judicial involvement. Thus, it is not as apparent in 1990 that the courts must exclude evidence in all violations of section 933.09 to prevent police misconduct.
Fourth, the exclusion of evidence is intended to deter police misconduct. Deterrence is similar to prevention, except that it emphasizes prevention through punishment. The police departments' exposure to monetary damages, coupled with the increased use of internal discipline within modern police departments, may provide an adequate alternative deterrent for cases of this type. If anything, experience over the last twenty-six years may suggest that the use of the exclusionary rule as a primary deterrent has resulted in an insufficient use of these more direct forms of deterrence. The state attorneys' and the attorney general's desire to introduce evidence often makes these state officers advocates in favor of marginal police conduct which they would undoubtedly prefer to curb. The goals promoted by the knock-and-announce requirement would be better achieved if the state attorneys and the attorney general could help to enforce this requirement without always losing the evidence which is collected through a valid warrant.
Fifth, the knock-and-announce requirement is typically justified on grounds that it promotes at least three purposes. It prevents violence and physical injury to both the police and the occupants of the home. It protects the occupants' private activities from unexpected exposure. It minimizes property damage resulting from forced entry. State v. Manning, 396 So.2d 219 (Fla. 4th DCA), review denied, 407 So.2d 1104 (Fla. 1981). In this case, those purposes are only modestly affected. There is no indication of physical injury, violence, or property damage in this case. If anything, despite the limited evidence in the record, one suspects that the police entered the home quickly because they feared possible violence after the man at the screen door had disappeared from view. The screen door created a condition in which activities inside could be viewed from the doorway. Indeed, if the screen door had been open, it appears that this entry would not have been forcible. State v. Brown, 564 So.2d 136 (Fla.2d DCA 1990). Since the purposes of knock-and-announce are not strongly affected by this case, we question whether the extreme penalty of exclusion is necessary or appropriate. If the penalty is not proportionate with the wrong, we wonder whether it successfully promotes the goals of knock-and-announce.
Finally, Benefield explained the common law exclusionary rule in a case involving a warrantless arrest. Subsequent to Benefield, the supreme court and the district courts have used the same analysis in cases involving valid search warrants. See, e.g., State v. Kelly, 287 So.2d 13 (Fla. 1973); Nank. We perceive a significant difference between an illegal entry which was not authorized by a court in accordance with the safeguards of the warrant procedure, and an entry which is authorized by a court but ineptly performed by the police. We have no desire to taint the judicial system through the use of illegal or unconstitutional evidence. That taint certainly exists when the police lack probable cause. On the other hand, that taint is far from obvious when the court authorizes the police to collect the evidence and the police simply use an incorrect procedure. The *735 statutory taint of the entry does not seem automatically to infect the evidence in this case.

III.
In asking for a reconsideration of the Benefield exclusionary rule in cases involving warrants, we are not suggesting to the supreme court that it should create a procedure in which the courts abandon their obligation to carefully monitor police misconduct. While the supreme court should adopt the best possible procedure, the following proposal may be adequate.
If a trial court finds that a search has violated section 933.09, before ordering the suppression of the evidence the state should be given an opportunity to establish that the specific case is not one in which the exclusionary rule should be employed. To except such a case from the exclusionary rule, the state should be required to prove that adequate alternative remedies exist to compensate the victim for the police mistake and to deter similar conduct in the future. To establish the adequacy of other remedies, the state should be required to show more than hypothetical or possible remedies. It should be required to show that the specific law enforcement department is in fact reviewing the violation in an appropriate manner through internal discipline or that equivalent action is occurring in another state agency. Since civil litigation is often slow and expensive and the monetary damages involved in many of these cases may not be large enough to attract attorneys through contingency fees, it may be appropriate for the courts to require proof in some cases that the law enforcement agency is willing to make a reasonable offer to settle a claim submitted under section 768.28(6), Florida Statutes (1989). Before it allows the use of the relevant evidence, the trial court should be firmly convinced that the use of the evidence will not taint the integrity of the court from the public's perspective.
This procedure would place stronger responsibility for the protection of citizens' privacy interests on the police, the same level of government at which violations of privacy occur. It would encourage the police to continually develop methods to protect the privacy of citizens while also maximizing their own personal safety. In the long run, we believe that such a system would promote the citizens' rights of privacy and deter police misconduct better than the use of the exclusionary rule in cases in which that rule seems too extreme.

IV.
We recognize that a modification of the common law exclusionary rule by the Florida Supreme Court does not fully dispose of this issue. Although Benefield does not expressly discuss the fourth amendment's prohibition of unreasonable search and seizure, the constitutional exclusionary rule was mandated for state use several years before Benefield. Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). Thus, the question is whether a statutory violation of section 933.09 is a constitutional violation of the fourth amendment's prohibition against unreasonable search and seizure and mandates use of the federal exclusionary rule.
Unless the boundaries of section 933.09 are identical to the fourth amendment, it is possible that an error in police procedure can be a statutory violation without resulting in a constitutional violation. See Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963). We already know that "exigent circumstances," which are not contained within the statute, are matters which permit a facial violation of the statute to be constitutionally reasonable. Evidence is not suppressed in cases of violent, destructive entry when, before the entry, the police reasonably, but mistakenly, believe that evidence is being destroyed or an ambush prepared. It seems more logical that, when post-entry circumstances establish no significant violence or property damage in a daytime entry for which any victim has civil or administrative remedies, the evidence is not unreasonably seized. While we do not deny the sanctity of the home, the sanctity of a home which is the subject of a valid search warrant should not be unreasonably protected. When the *736 totality of the circumstances of the entry, viewed either before or after the entry, establish a statutory violation which is not constitutionally unreasonable, exclusion should not be federally mandated.[3]
Even if this case does invoke the fourth amendment, the United States Supreme Court has stated that the exclusionary rule must be employed under a balancing test which considers the nature of the police conduct which is to be deterred, the strong interest in making all evidence available to the trier of fact, and the need to provide an effective sanction to a constitutional right. Michigan v. Tucker, 417 U.S. 433, 94 S.Ct. 2357, 41 L.Ed.2d 182 (1974). In light of the changes in Florida law as well as the developments in the rule of inevitable discovery, the constitutional balance may now permit the introduction of this evidence. If any violation of section 933.09 falls outside the fourth amendment or the federal exclusionary rule, this violation would seem to be such a violation. Indeed, if the cocaine on Ms. Robinson's person had been found in a search which occurred outside the home, it appears that the cocaine would have been admissible. New York v. Harris, ___ U.S. ___, 110 S.Ct. 1640, 109 L.Ed.2d 13 (1990).
We would emphasize that we believe this proposal will strengthen the fourth amendment, rather than weaken it. It allows the courts, the attorney general and the state attorneys to promote the goals of the fourth amendment without always invoking the exclusionary rule. When the exclusionary rule is invoked as the primary remedy in a case such as this, we fear the public sometimes rejects the important, historic rights contained within the fourth amendment simply because they do not separate those vital constitutional rights from the occasional extreme and unreasonable use of the exclusionary remedy.

V.
We certify the following question as a question of great public importance:
WHEN THE POLICE NEGLIGENTLY EXECUTE A VALID SEARCH WARRANT WITHOUT SIGNIFICANT VIOLENCE OR PROPERTY DAMAGE, MAY A TRIAL COURT ADMIT THE RESULTING EVIDENCE IF THE STATE PROVES THAT THE POLICE MISCONDUCT INVOLVED IN THE INCIDENT IS BEING APPROPRIATELY INVESTIGATED AND THAT THE VICTIM HAS AN ADEQUATE CIVIL REMEDY?
Affirmed.
SCHOONOVER, A.C.J., concurs in result only.
PARKER, J., concurs specially.
PARKER, Judge, concurring specially.
I agree with the result reached in Judge Altenbernd's opinion because this court is bound by the decisions of State v. Kelly, 287 So.2d 13 (Fla. 1973) and Nank v. State, 406 So.2d 1282 (Fla. 2d DCA 1981). Both Kelly and Nank relied upon the case of Benefield v. State, 160 So.2d 706 (Fla. 1964) as authority for their holdings. Benefield, however, involved the warrantless arrest of the defendant inside his home after the officer opened a door without permission to enter from any resident. That factual situation is very different than the facts in Kelly, Nank, and the instant case. Like Judge Altenbernd, I would urge the supreme court to consider whether the exclusionary rule should apply when the facts are as those presented in this case.
NOTES
[1] Since we are not suggesting the admissibility of evidence which is gathered without probable cause or which is obtained by police engaged in conduct which rises to the level of bad faith or malicious purpose, we expect that the monetary liability will fall upon the law enforcement department rather than the individual officer. § 768.28(9)(a), Fla. Stat. (1989). This monetary liability is not a direct deterrent of individual police misconduct, but it is certainly more direct than the deterrent provided by the exclusionary rule.
[2] The statute does not specify any minimum time which the officers must delay before entering without permission. Under similar statutes, delays of a few seconds have been permitted. State v. Ruminer, 786 F.2d 381 (10th Cir.1986) (five to ten seconds); United States v. Augello, 368 F.2d 692 (3d Cir.1966), vacated on other grounds sub nom., DeCesare v. United States, 390 U.S. 200, 88 S.Ct. 900, 19 L.Ed.2d 1036 (1968) (four to five seconds); McClure v. United States, 332 F.2d 19 (9th Cir.1964) (four to five seconds). In light of the disappearance of the man at the screen door, it seems clear that these deputies would have needed to delay only a few seconds.
[3] Article I, section 12, of the Florida Constitution is construed in conformity with the fourth amendment, as interpreted by the United States Supreme Court. Evidence which is not admissible under the fourth amendment is not admissible under the Florida Constitution. See Bernie v. State, 524 So.2d 988 (Fla. 1988).