592 So.2d 1129 (1991)
STATE of Florida, Appellant,
v.
Earl R. BAMBER, Appellee.
No. 90-00636.
District Court of Appeal of Florida, Second District.
December 20, 1991.
*1130 Robert A. Butterworth, Atty. Gen., Tallahassee, and Brenda S. Taylor, Asst. Atty. Gen., Tampa, for appellant.
Douglas L. Grose, Tampa, for appellee.
ALTENBERND, Judge.
The state appeals an order granting Mr. Bamber's motion to suppress evidence obtained during a search of his home pursuant to a search warrant. We affirm the suppression order because the state failed to establish an exigent circumstance that would have allowed the police to dispense with the "knock-and-announce" requirements at the time the search was performed. See § 933.09, Fla. Stat. (1989); Benefield v. State, 160 So.2d 706 (Fla. 1964). Although the state established that the warrant authorized a search for a small quantity of cocaine and that the home in question had normal residential plumbing, we do not believe these conditions alone establish an exigent circumstance. We recognize express conflict with State v. Bell, 564 So.2d 1235 (Fla. 5th DCA 1990), and Armenteros v. State, 554 So.2d 574 (Fla. 3d DCA 1989). We also express conflict with State v. Pardo, 582 So.2d 1225 (Fla. 3d DCA 1991), jurisdiction accepted, No. 78,318 (Fla. July 26, 1991).
On August 18, 1989, the Hillsborough County Sheriff's Office applied for a search warrant to search Mr. Bamber's home. It also requested authority to execute the warrant without complying with the knock-and-announce requirements of section 933.09, Florida Statutes (1989). The supporting affidavit from a deputy stated that the deputy had been contacted by a confidential informant during the week of August 6, 1989. The informant told the deputy that Mr. Bamber regularly distributed cocaine from his home. The home was described as a typical split-level house in a residential neighborhood in Brandon, Florida.
The affidavit further explained that the informant had made two controlled buys of cocaine for the deputy at the residence between August 6 and August 18, 1989. During one of the controlled buys, the informant had worn a transmitter and had purchased drugs from Mr. Bamber.[1] The informant told the deputy that Mr. Bamber had retrieved cocaine from an area near a bathroom and that he had a Rottweiller dog in the residence.
The affidavit concluded with the following paragraph:
Your affiant also believes and has reason to believe that white male Earl Bamber has an immediate ability to destroy or get rid of aforementioned narcotics by *1131 the use of the bathroom facilities. Your affiant also believes and has reason to believe that the safety of the occupants within the residence described in exhibit "a" and those officers executing this warrant would be greatly enhanced by the execution of this warrant as a "no knock" warrant.
The magistrate issued the search warrant and attached the deputy's affidavit to the warrant to establish the probable cause for the warrant. The magistrate, however, did not modify the language of the standard warrant in an attempt to create a preestablished right to dispense with the knock-and-announce requirements of section 933.09.
The deputy executed the warrant with the assistance of the Hillsborough County Sheriff's Emergency Response Team. The group of officers went to the Bambers' home at approximately 4:30 p.m. on Friday, August 18, 1989. They were dressed in police fatigues with orange vests. They set off a "diversionary bomb" and entered the home without knocking or announcing. Mr. and Mrs. Bamber, their son, and two repairmen were in the home at the time. One of the repairmen testified that an officer put a gun to his head and slammed him to the ground. The other repairman testified that he was on a ladder, mounting trim in the dining room. He was ordered to the floor at gunpoint.
After the area was secure, the deputy entered the home with the search warrant and conducted the search. He found a total of 31 grams of cocaine in eight baggies in Mr. Bamber's pants pocket. He also found a small quantity of marijuana and $1,732 in cash. Based on this evidence, the state filed an information charging Mr. Bamber with possession of cocaine and possession of marijuana. Following an evidentiary hearing, the trial court granted the motion to suppress the evidence seized in the search of the home.
Although a few jurisdictions have adopted legislation authorizing a magistrate to issue a "no-knock" warrant, Florida is not one of those jurisdictions. See 2 W. LaFave, Search and Seizure § 4.8(g) (2d ed. 1987). Thus, the magistrate in this case correctly issued a standard search warrant without any order overriding the requirements of section 933.09. Because the magistrate did not expressly deny the request for a no-knock warrant and attached the affidavit to the warrant, it is apparent that the deputy believed in good faith that he had been authorized to enter the home without knocking an announcing. His good faith belief, however, does not create any exception to the exclusionary rule in this case. See State v. Robinson, 565 So.2d 730 (Fla. 2d DCA), review dismissed, 574 So.2d 143 (Fla. 1990). Likewise, even though the cocaine on Mr. Bamber's person would have been admissible if found during a search outside the home during an arrest subsequent to the execution of this search warrant, we cannot overturn this order of suppression. See New York v. Harris, 495 U.S. 14, 110 S.Ct. 1640, 109 L.Ed.2d 13 (1990).
Under the Benefield analysis, the only exigent circumstance that could justify this search would be a reasonable belief at the time of entry that the evidence would be destroyed if the police satisfied their statutory obligation to knock and announce. Earman v. State, 265 So.2d 695 (Fla. 1972); Berryman v. State, 368 So.2d 893 (Fla. 4th DCA 1979). The trial court found that the state had not proven this exception. That factual finding is supported by the record.
The state argues that the trial court was bound to follow the Third District's decision in Armenteros, which has been followed by the Fifth District in Bell during the pendency of this appeal. Both cases dispense with the knock-and-announce requirement in cases involving small quantities of drugs in buildings with normal residential plumbing. Although the state's argument concerning the role of the trial court has merit, we decline to follow these two decisions and recognize express conflict with the rule announced in them.
This court has long recognized that trial courts are "obligated to follow decisions of other district courts of appeal in this state in the absence of conflicting authority and where the appellate court in its own district has not decided the issue." Chapman v. *1132 Pinellas County, 423 So.2d 578 (Fla. 2d DCA 1982). The jurisdictional structure of Florida's appellate courts is unique. See Scheb, Florida's Courts of Appeal: Intermediate Courts Become Final, 13 Stetson Law Rev. 479, 491-511 (1984). We are one state with five districts, each of which is authorized to separately evaluate the merits of various legal rules and create legal precedent. When express disagreement exists between the districts concerning an issue of law, the supreme court has jurisdiction to announce a single rule and resolve the conflict. Thus, our appellate structure encourages independent legal analysis at the judicial level where precedent is created, and endeavors to assure that conflicts will be rapidly resolved.
Trial courts perform a very important, but a very different, function in our judicial system. Trial courts do not create precedent. If a trial court establishes its own unique rules, those rules are not binding, even in the adjacent courtroom. Litigants need predictability and certainty whenever possible in a trial court. Predictability and stability in the law promote amicable settlements and help people avoid litigation. Thus, Floridians need to know, to the greatest extent possible, that trial courts will apply the same law in Pensacola, Tampa, and Miami. Trial judges are free to vigorously express their disagreement with controlling precedent from other districts, but a workable system of jurisprudence requires that they obey that precedent until their district creates conflicting precedent.
While a constitutional mechanism exists to efficiently resolve conflict among the districts, no such mechanism exists to resolve conflicts among hundreds of circuit court judges. It is difficult to conceive a system that could perform that function in a timely and efficient manner. At worst, a system in which trial courts were not bound by the only Florida precedent on a question of law would be a system promoting the rule of individual judges rather than the rule of law. At best, it would tend to create five balkanized districts confederated into a loose Floridian union.
Although the reasonableness of a search and seizure is a fact-intensive issue and is not always governed by bright-line rules of law, it is difficult to reconcile the trial court's ruling in this case with the precedent announced in Armenteros. Both cases involve entry into a residence by a SWAT unit without knocking and announcing. Both cases involve a controlled purchase by a law enforcement agent who established that the household had "user" quantities of cocaine and normal residential plumbing. We are inclined to believe that the trial court in this case should have expressed its disagreement with Armenteros, but should have obeyed that ruling under the Chapman analysis.
We discuss this problem because the Third District has recently conflicted with Chapman and has given its circuit court judges the authority to disregard the otherwise controlling precedent of the other four districts. State v. Pardo, 582 So.2d 1225 (Fla. 3d DCA 1991), jurisdiction accepted, No. 78,318 (Fla. July 26, 1991). We use this case to reaffirm our conviction that the circuit courts within the Second District must obey controlling precedent from the other districts.[2] Hopefully, the supreme court will resolve this conflict between the precedent of the district courts in the manner contemplated by the Florida Constitution.
Addressing the merits of the rule announced in Armenteros and Bell, we are not convinced that the existence of normal plumbing in one's home dispenses with the need to knock and announce during the execution of a warrant to search for small quantities of cocaine. Plumbing is required in virtually any home that complies with applicable building codes. Many warrants *1133 involve searches for small items that could in theory be flushed down a toilet. If flushable items and plumbing are allowed to create an exigent set of circumstances, then the exception will begin to overshadow the rule.
In this case, the police did not provide a case-specific explanation that reasonably caused them to believe that Mr. Bamber's household was likely to destroy evidence. There clearly are facts and circumstances under which the police can reasonably decide, at the time they serve a warrant, that a household presented an unusual risk concerning the destruction of evidence. Such circumstances are not presented in this case.[3] We will not allow the mere possibility that usual household plumbing might be used to destroy a small quantity of drugs to create an exigent circumstance.
Affirmed.
SCHEB, A.C.J., and FRANK, J., concur.
NOTES
[1] We note that these two sales are not the incidents alleged as offenses in the information. The suppression of evidence does not involve any evidence relating to these two transactions.
[2] Ironically, we reaffirm this belief by requiring our circuit courts to follow a controlling precedent of the Third District, even though its circuit courts are now free to disregard the otherwise controlling precedent of this court. It has been suggested, perhaps facetiously, that we should limit Chapman v. Pinellas County, 423 So.2d 578 (Fla. 2d DCA 1982), so that circuit courts in the Second District need only obey precedent from districts that recognize the precedential effect of our reported cases. We decline to create such a rule of inter-district renvoi. Hopefully, the formalized rules governing conflicts of law can be limited to conflicts between states.
[3] For example, there is no evidence in this record that the household contained any weapons or that the deputy had a valid reason to fear that weapons would be used if he knocked at the door. The evidence does not suggest that the occupants had prior criminal records, had attempted to destroy evidence in the past, were known to be violent, had expressed an intention to destroy evidence, or had unusual sophistication concerning the destruction of evidence. This case seems to involve a standard home in a typical neighborhood, supplying drugs to a small group of customers. The evidence does not establish a "crack house" dedicated to the full-time sale of drugs. The plumbing in this house may be a factor that could have permitted only a brief announcement at the door, but it does not justify police disobedience of a long-standing statutory requirement.