604 So.2d 1277 (1992)
STATE of Florida, Appellant,
v.
Nathaniel Hirum THOMAS, Appellee.
No. 91-1756.
District Court of Appeal of Florida, Fifth District.
September 11, 1992.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Nancy Ryan, Asst. Atty. Gen., Daytona Beach, for appellant.
James B. Gibson, Public Defender, and M.A. Lucas, Asst. Public Defender, Daytona Beach, for appellee.
HARRIS, Judge.
Nathaniel H. Thomas was a convicted felon suspected of selling small quantities of cocaine from his home. After conducting a controlled buy, the officers obtained a search warrant on February 4, 1991. Four days later a second controlled buy was effected at 7:56 p.m. The warrant was executed one hour and thirty four minutes after the second purchase.
The officers did not comply with the knock and announce rule. When they entered, Thomas was not there. The search revealed no drugs but a firearm was discovered. *1278 Thomas was arrested for possession of a firearm by a convicted felon.[1]
Thomas moved to suppress, and the court granted suppression, solely on the basis that the officers had failed to knock and announce. We reverse.
Officer Barnes testified that the cocaine purchased from Thomas had been small size rock cocaine. The officer had reason to believe that additional cocaine was in the house. The size of the rocks involved in this case could easily be disposed of by being "eaten, flushed, crushed or hidden." The utility records were checked and the house was determined to have normal plumbing facilities.
The officer further testified that normally drug dealers with small amounts of drugs will try to conceal or discard such drugs. The officers believed that Thomas, dealing in small amounts of cocaine, would follow that "general normal procedure."
The trial judge suppressed the evidence for two reasons. First, the knock and announce rule should be enforced because the search warrant was executed more than 30 minutes after the last controlled buy. This fact is totally irrelevant as to whether the destruction of evidence exception is applicable to the knock and announce rule.
The trial court gave as the second reason: "Officer Barnes did testify that he had no articulable facts in this particular case that would lead him to believe that the destruction of evidence would occur, except that in all cases of user-type quantities, that is a possibility."
The trial judge apparently relied on the Second District opinion in State v. Bamber, 592 So.2d 1129 (Fla. 2d DCA 1991) which disagreed with our Bell decision.[2] The Bamber court held:
Addressing the merits of the rule announced in Armenteros and Bell, we are not convinced that the existence of normal plumbing in one's home dispenses with the need to knock and announce during the execution of a warrant to search for small quantities of cocaine. Plumbing is required in virtually any home that complies with applicable building codes. Many warrants involve searches for small items that could in theory be flushed down a toilet. If flushable items and plumbing are allowed to create an exigent set of circumstances, then the exception will begin to overshadow the rule.
In this case, the police did not provide a case-specific explanation that reasonably caused them to believe that Mr. Bamber's household was likely to destroy evidence. There clearly are facts and circumstances under which the police can reasonably decide, at the time they serve a warrant, that a household presented an unusual risk concerning the destruction of evidence. Such circumstances are not presented in this case.
Bamber at 1132-33.
Neither Bell, Armenteros v. State, 554 So.2d 574 (Fla. 3d DCA 1989), nor Berryman v. State, 368 So.2d 893 (Fla. 4th DCA 1979) require "that a household present an unusual risk concerning the destruction of evidence" in order to justify the exception.[3]
If the concern about the destruction of evidence is a valid exception to the knock and announce rule, it must be interpreted reasonably or, rather than the exception overshadowing the rule, the exception will *1279 be rendered meaningless. The Second District has not told us what "facts and circumstances" would justify a belief that the "household present[s] an unusual risk." It appears that drains and fireplaces would be insufficient. Certainly if the officers viewed the destruction of the evidence from outside, or heard the suspects planning or carrying out the destruction, the Bamber test might be met. That is of little comfort, of course, if the small quantities of contraband have been destroyed during this delay. The practical effect of Bamber will render the execution of search warrants where only a small amount of contraband is involved totally ineffective.
Bell is still the law of this district and only requires that the officers believe that because of the small amount of contraband and the facilities available to the suspect, destruction is likely if immediate execution of the warrant is not effected.
REVERSED and REMANDED.
W. SHARP, J., concurs.
GOSHORN, C.J., dissents with opinion.
GOSHORN, Chief Judge, dissenting.
I respectfully dissent. While I agree that the lapse of time between the last controlled buy at 7:56 P.M. and the execution of the search warrant at 9:30 P.M. would not justify granting Thomas's motion to suppress, I cannot accept the view that this court's opinion in State v. Bell, 564 So.2d 1235 (Fla. 5th DCA 1990), provides an exception to the knock and announce requirement of section 933.09, Florida Statutes (1991), in all instances where the subject of the search warrant consists of small quantities of drugs. Such an expansive reading of Bell renders meaningless the protection guaranteed to the citizens of this state by the legislature's enactment of the "knock and announce" statute.
Our holding in Bell relied upon the supreme court's opinions in Earman v. State, 265 So.2d 695 (Fla. 1972) and Benefield v. State, 160 So.2d 706 (Fla. 1964). See Bell, 564 So.2d at 1236-37. In Benefield, where the court quashed an opinion of the district court of appeal denying the defendant's motion to suppress, Justice Terrell observed:
Entering one's home without legal authority and neglect to give the occupants notice have been condemned by the law and the common custom of this country and England from time immemorial. It was condemned by the yearbooks of Edward IV, before the discovery of this country by Columbus. Judge Prettyman for the Court of Appeals in Accarino v. United States, 85 U.S.App.D.C. 394, 179 F.2d 456, 465, discussed the history and reasons for it. See also 22 Mich.L.Rev. 541, 673, 798, "Arrest Without a Warrant," by Wilgus. William Pitt categorized a man's home as his castle. Paraphrasing one of his speeches in which he apostrophized the home, it was said in about this fashion: The poorest pioneer in his log cabin may bid defiance to the forces of the crown. It may be located so far in the backwoods that the sun rises this side of it; it may be unsteady; the roof may leak; the wind may blow through it; the cold may penetrate it and his dog may sleep beneath the front steps, but it is his castle that the king may not enter and his men dare not cross the threshold without his permission.
This sentiment has moulded our concept of the home as one's castle as well as the law to protect it. The law forbids the law enforcement officers of the state or the United States to enter before knocking at the door, giving his name and the purpose of his call. There is nothing more terrifying to the occupants than to be suddenly confronted in the privacy of their home by a police officer decorated with guns and the insignia of his office. This is why the law protects its entrance so rigidly. The law so interpreted is nothing more than another expression of the moral emphasis placed on liberty and the sanctity of the home in a free country. Liberty without virtue is much like a spirited horse, apt to go berserk on slight provocation if not restrained by a severe bit.
Benefield, 160 So.2d at 709. In Earman, the court held that an appellate court is not *1280 justified in finding an exception to the knock and announce rule as a matter of law when the record fails to show any proof that the officers had reasonable grounds to fear the destruction of evidence at the time of entry. Earman, 265 So.2d at 697. In so holding, the supreme court rejected the appellate court's broadening of the exception to the knock and announce rule to include instances where the facts merely showed that destruction could have occurred. The court was explicit in its rejection of the relaxed "could have" standard:
Essential to [proof of the validity of the arrest as a predicate for the proper admission of the seized contraband] is testimony by the arresting officers or other competent evidence that they had reasonable grounds to believe the marijuana within the house would be immediately destroyed if they announced their presence. Absent such evidence, the fruits of any search conducted pursuant to such arrest must be considered illegally obtained. [Emphasis added.]
Id.
With these precepts in mind, I would read Bell to require evidence of articulable and particularized facts showing more than small quantities of drugs and indoor plumbing before dispensing with the requirements of the knock and announce rule. Specifically, I would adopt the reasoning of the Second District Court of Appeal in State v. Bamber, 592 So.2d 1129 (Fla. 2d DCA 1991) and find that Bell is in agreement, not conflict, with Bamber. In Bamber, the Second District considered facts similar to those in Bell and held that the mere fact that the small quantity of cocaine could have been disposed of in the home's normal residential plumbing did not constitute exigent circumstances which would allow the law enforcement officers to dispense with the knock and announce rule. Id. at 1132. The court explained:
In this case, the police did not provide a case-specific explanation that reasonably caused them to believe that Mr. Bamber's household was likely to destroy evidence. There clearly are facts and circumstances under which the police can reasonably decide, at the time they serve a warrant, that a household presented an unusual risk concerning the destruction of evidence. Such circumstances are not presented in this case.
Id. at 1133 (footnote omitted).
While the facts in Bell are unclear, the evidence apparently showed that the quantities of contraband maintained by Bell in his residence would be readily disposed of in a residential sink. Bell, 564 So.2d at 1237. However, no such evidence exists in this case. In fact, the record in this case is even devoid of any evidence relating to the amount of drugs the officers had probable cause to believe Thomas kept in his residence. Evidence of the quantity of drugs believed to be involved is relevant to determining the reasonableness of the decision not to knock and announce.
In this case, the only evidence offered to excuse compliance with the knock and announce rule was:
1. testimony that controlled buys resulted in the purchase of small quantities of drugs from within the residence (but not testimony concerning the quantity of drugs in the residence),
2. testimony that utility records indicated the residence appeared to have normal plumbing facilities, and
3. testimony that generally, drug dealers will try to conceal or discard small amounts of drugs when served with a warrant.
The possibility of weapons in the house apparently did not concern the officers and was not discussed by them prior to serving the warrant. The officers further testified that they had no knowledge of specific facts in this case in any way indicating that Thomas would have destroyed evidence had the officers complied with the knock and announce rule when they served the warrant.
Recognizing the scourge in this state caused by illegal drugs and related activity, it is tempting to approve any law enforcement procedure which is perceived as assisting in the control of the drug problem. We must, however, strike a balance and *1281 enforce the constitution and laws of this state which are designed and enacted for the protection of all citizens from unlawful governmental intrusion.
For all the reasons set forth, I would affirm the trial court.
NOTES
[1] The record does not indicate how or where the firearm was discovered.
[2] State v. Bell, 564 So.2d 1235 (Fla. 5th DCA 1990).
[3] Actually Berryman requires that "the police must have some facts pertaining to the case which would reasonably cause such apprehension." (Berryman at 895). The requirement in Berryman was satisfied because "the police had viewed the small amount of narcotics and other contraband ... hence, they had good reason to fear destruction of the evidence if there was any delay in making their entry."

Consider also State v. Roman, 309 So.2d 12 (Fla. 4th DCA 1975), rev. denied, 312 So.2d 761 (Fla. 1975), in which the court refused to apply the destruction of evidence exception where "the occupants of a room which had no drain and only two exits, at both of which armed police officers were standing, had no opportunity at all to get rid of the seized marijuana ..." (Roman at 14.)